David REMINGTON, Richard Elberfeld, Katherine Elberfeld, Thomas Burns, Susan Burns, Lane Armstrong, and Lynn Armstrong, Plaintiffs-Respondents,

v.

CITY OF BOONVILLE, Missouri, a municipal corporation, and the Board of Adjustment of the City of Boonville, Missouri, an administrative governmental entity, Richard Casanova, James Conway, Arthur Hittner, Ralph Twillman, and Ed Gordon, Defendants-Appellants.

No. WD 36609.

Missouri Court of Appeals, Western District.

Dec. 10, 1985.

Thomas M. Schneider, Columbia, for defendants-appellants.

Lane L. Harlan, Boonville, for plaintiffs-respondents.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

SOMERVILLE, Judge.

By way of an introductory statement, denial of a building permit to erect a car wash in a district zoned C–II in Boonville, Missouri, prompted an appeal by the applicant to the Board of Adjustment of the City of Boonville, Missouri. The Board of Adjustment, after giving proper notice, conducted a public hearing at which time evidence was received, pro and con, on the matter. After the public hearing was concluded, the Board of Adjustment went into executive session for purposes of deliberation and voting, during which time the public, the proponents and opponents, and their respective counsel, were excluded. Thereafter, the Board of Adjustment entered an order granting the requested building permit.

The opponents, as plaintiffs, filed a "Petition For Declaratory Judgment And Injunction" in the Circuit Court of Cooper County, naming the City of Boonville, Missouri,[1] the Board of Adjustment of the City of Boonville, Missouri, and its individual members, as defendants. In their petition, plaintiffs-opponents prayed for a judgment declaring that the action of the Board of Adjustment in retiring in secret session to deliberate and vote on the matter violated § 610.015, RSMo 1978, and §§ 610.010, 610.020 and 610.025, RSMo Supp.1982, colloquially known as the "Sunshine Law". Plaintiffs-opponents, in their petition, further prayed that the Board of Adjustment and its individual members be permanently enjoined from holding secret sessions of like manner in the future. The Circuit Court of Cooper County, although denying the injunctive relief prayed for, entered judgment declaring that the Board of Adjustment of the City of Boonville, Missouri, and the individuals comprising said board, were subject to §§ 610.010, 610.015, 610.020 and 610.025, supra, and that they violated the same when they retired in executive session and excluded the public for purposes of deliberating and voting on the matter in question. The Board of Adjustment and its members (hereinafter appellants) have appealed.

Appellants contend on appeal that they were exempt from the application of §§ 610.010, 610.015, 610.020 and 610.025, supra, because they were acting in a quasi-judicial capacity when they went into executive session to deliberate and vote on the matter. Broadly speaking, initial enactment of §§ 610.010, et seq., supra, reflected the General Assembly's response to a smoldering public demand for accountability in the conduct of governmental affairs, coupled with the belief that such could be best achieved in open forums.

Unfortunately, respondents have not seen fit to favor this court with a brief. Appellants have cited a number of cases from other jurisdictions ostensibly supporting their position on appeal. Appellants have also attempted to distinguish several cases from other jurisdictions which do not support their position. The cases from other jurisdictions, in congregate, neither serve nor disserve appellants' position as the provisions and wording of the respective "open meeting" or "sunshine" laws involved therein vary, in a number of salient respects, from one another, and, more importantly, from §§ 610.010, 610.015, 610.020 and 610.025, supra.

Resolution of this appeal imposes a judicial obligation to fathom and ascertain the meaning, scope and applicability of §§ 610.010, et seq., supra. Lack of a state counterpart to the Congressional Record compounds this admittedly difficult task. The only recourse is rules or canons of construction, many of which are widely diverse in nature, and in some respects conflicting, which have been judicially promulgated.

---

1. The City of Boonville, Missouri, was eventually dismissed as a party defendant.

One rule or canon of construction, free of diversity or conflict, is of cardinal importance—the intent of the legislature controls. *Edwards v. St. Louis County,* 429 S.W.2d 718, 722 (Mo. banc 1968). Consequently, there is no occasion to resort to other rules or canons of construction unless they subserve rather than subvert legislative intent, as the ascertainment of legislative intent is the ultimate goal of statutory construction.

Consistent with the above, the following rules or canons of construction are perceived as subserving ascertainment of the legislative intent permeating Missouri's "Sunshine Law". It is assumed that the intent of the legislature in enacting a statute is to serve the best interests and welfare of the citizenry at large. *Cohen v. Poelker,* 520 S.W.2d 50, 52 (Mo. banc 1975). Amendments to statutes, although not an infallible guide, may be considered for the purpose of ascertaining legislative intent. *State ex Inf. Danforth v. David,* 517 S.W.2d 56, 58 (Mo.1974); and *Murrell v. Wolff,* 408 S.W.2d 842, 850 (Mo.1966). Words used in a statute are to be given their plain and ordinary meaning so as to promote the object and manifest purpose of the statute. *State ex rel. Zoological Pk. Subd., St. Louis v. Jordan,* 521 S.W.2d 369, 372 (Mo.1973).

Section 610.010(3), supra, insofar as here pertinent, defines "Public Meeting", as follows: " 'Public Meeting, any meeting of a public governmental body subject to this act at which any public business is discussed, decided, or public policy formulated. . . .' " Section 610.015, supra, mandates that all "public meetings shall be open to the public." Prior to being amended in 1982, § 610.010(2), RSMo 1978, insofar as here pertinent, defined "public governmental body" as follows: " 'Public governmental body', *any constitutional or statutory governmental entity,* including any state body, agency, board, bureau, commission, committee, department, division, or any political subdivision of the state, of any county or of any municipal government, school district or special purpose district, any other governmental deliberative body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power, any committee appointed under the direction or authority of any of the above named entities and which is authorized to report to any of the above named entities, and any quasi-public governmental body." (emphasis added)

During the time the above statutory definition of "Public Governmental Body" prevailed, § 610.025, RSMo 1978, captioned "Closed meetings authorized, when", included [subparagraph (1)] the following specific exemption: "Any meeting, record, or vote of judges, or a jury during the deliberation of a verdict, meeting of a grand jury, juvenile court proceedings, and court proceedings involving legitimacy, illegitimacy, adoption, or probation and proceedings involving parole may be a closed meeting, closed record, or closed vote."

It appeared, at least in the eyes of the legislature, that the comprehensive definition of "public governmental body" in § 610.010(2), RSMo 1978, supra, was broad enough to include the judiciary, thus accounting for the specific exemption regarding certain judicial activities in § 610.025(1), RSMo 1978, supra. If the legislature intended for the comprehensive definition of "public governmental body" to include the judiciary, as it obviously did, then it follows with even greater force of logic, in view of the language employed, that it intended for the comprehensive definition of "public governmental body" to include administrative bodies such as Boards of Adjustment. Moreover, the fact that the legislature saw fit to specifically exempt certain judicial activities, § 610.025(1), RSMo 1978, supra, absent mentioning administrative bodies and their activities in any respect, is indicative of a legislative intent to subject all meetings of administrative bodies such as Boards of Adjustment, including deliberative sessions while acting in a quasi-judicial capacity, to the open meeting requirements of Missouri's "Sunshine Law".

Section 610.010(2), RSMo Supp.1982 (as amended in 1982), insofar as here pertinent, defines "public governmental body", as follows: " 'Public governmental body', *any legislative or administrative governmen-*

*tal entity* created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee, department, or division of the state, of any political subdivision of the state, of any county or any municipal government, school district or special purpose district, any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rulemaking or quasi-judicial power, any committee appointed by or under the direction or authority of any of the above named entities and which is authorized to report to any of the above-named entities, and any quasi-public governmental body." (emphasis added)

By substituting *"any legislative or administrative governmental entity,"* § 610.010(2), RSMo Supp.1982, supra, in lieu of *"any constitutional or statutory governmental entity"*, § 610.010(2), RSMo 1978, supra, the legislature totally removed the judiciary from the definition of a "public governmental body", and, ipso facto, from the operation of Missouri's "Sunshine Law". This conclusion is buttressed by the fact that § 610.025, RSMo Supp.1982, amending § 610.025, RSMo 1978, supra, in 1982, eliminated the judicial exemption formerly contained in § 610.025(1), RSMo 1978, supra.

As observed in *Tribune Pub. Co. v. Curators of Univ. of Mo.*, 661 S.W.2d 575, 584 (Mo.App.1983), "[b]y its very nature the quintessence of a 'public governmental body' is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, *or the exercise of quasi-judicial power.*" (emphasis added) Administrative bodies, even when acting in a quasi-judicial capacity, cannot circumvent compliance with the "open meeting" requirements of §§ 610.-010, et seq., supra, as the Board of Adjustment and its members seek to do, by riding on the "coattails" of legislative exclusion of the judiciary. The fallacy of attempting to do so is fourfold: (1) the judiciary is not a "public governmental body" as presently defined in § 610.010(2), RSMo Supp.1982, while, on the other hand, administrative tribunals such as Boards of Adjustment are clearly "public governmental bodies" as defined therein; (2) Boards of Adjustment possess no judicial power, even when acting in a quasi-judicial capacity, as judicial power is vested exclusively in the courts under Art. V, § 1, Mo. Const.1945 (as amended 1976); (3) none of the activities of Boards of Adjustment are exempt under any of the provisions of § 610.025, RSMo Supp.1982; and (4) subjecting Boards of Adjustment, even when acting in a quasi-judicial capacity, to the requirements of §§ 610.010, et seq., supra, is in harmony with § 89.080, RSMo 1978, mandating that "[a]ll meetings of the board [Board of Adjustment] shall be open to the public."

Both the letter and spirit of §§ 610.010, et seq., RSMo Supp.1982, bespeak of a legislative intent to subject all meetings of Boards of Adjustment, including deliberations while acting in a quasi-judicial capacity, to the "open meeting" requirements of Missouri's "Sunshine Law".

Appellants rely on a number of "policy arguments" to support their contention that they should be exempt, when deliberating in a quasi-judicial capacity, from the "open meeting" requirement of Missouri's "Sunshine Law". For example, they argue that the "chilling" and "stampede" effect of deliberating in public while acting in a quasi-judicial capacity demonstrates a need to exclude or exempt such proceedings from the "Sunshine Law". Relief from total exposure to the illuminating rays of the "Sunshine Law" on policy grounds is misdirected on this appeal. If there be any verity to the policy arguments espoused by appellants, they should be addressed to the General Assembly as it alone possesses the exclusive prerogative of amending Missouri's "Sunshine Law".

Judgment affirmed.

All concur.