W.K. JENKINS, et al., Appellants,

v.

MISSOURI FARMERS ASSOCIATION, INC., Respondent.

No. WD 46255.

Missouri Court of Appeals,
Western District.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 30, 1993.

Application to Transfer Denied
May 25, 1993.

Gerard D. Eftink, Kansas City, for appellants.

J. Brian Griffith and Rebecca McGinnis, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and HANNA, JJ.

LOWENSTEIN, Chief Judge.

W.K. Jenkins and family appeal a summary judgment entered against them by the trial court. The Jenkins' case involves the issue of whether they had a landlord's lien for rent in 1989 on crops planted in the fall of 1989, harvested in 1990 and delivered to the Missouri Farmers Association (MFA) in June and July of 1990. If the Jenkinses had a landlord's lien on the crops to secure payment of unpaid 1989 rent, then the lien would have priority over MFA's security interest. *Lane v. Pollard,* 88 Mo.App. 326, 330 (1901). This case centers around the interpretation of § 441.280, RSMo.1986 which gives the landlord a lien on crops "grown" to secure rent that accrues in such year. The statute provides: "Every landlord shall have a lien upon the crops grown on the demised premises in any year, for the rent that shall accrue for such year ... and such lien may be enforced by attachment in the manner herein provided." § 441.280, RSMo. The trial court concluded the statute meant the crops secured payment of rent for the year the crops "matured." Consequently, the court granted summary judgment in favor of MFA on the priority contest and in favor of MFA on the Jenkins' claims for conversion and tortious interference with contract.

The facts in this case follow. The appellants, the Jenkinses, leased farm land to the Hayeses for the calendar years of 1989 and 1990. The Jenkinses took a security interest in "all crops grown on said land for crop year" to secure the payment of rent in the amount of $190,873 annually. In addition to the consensual security interest, the Jenkinses allege they had a statutory lien on the crops grown to secure payment of rent. See § 441.280 RSMo. About five days after the Jenkinses filed their financing statement in 1989 to evidence their security interest, MFA filed its own financing statement which indicated that MFA, too, had a security interest in all the Hayes' crops. In June and July, 1990, the Hayeses delivered to MFA wheat planted in 1989 and harvested in 1990. MFA knew the Jenkinses owned the farm land the Hayeses used to plant the wheat delivered to MFA. During the time the Hayeses delivered wheat to MFA, W.K. Jenkins went to MFA and told an MFA representative about the liens the Jenkinses claimed on the wheat. Subsequently, the Jenkinses gave MFA written notice of their security interest.

Six months after the Hayeses, the Jenkins' tenants, delivered the wheat to MFA, MFA wrote a check to itself for $38,280.07, the amount the Hayeses would have received. The Jenkinses alleged MFA took the proceeds as payment of part of the indebtedness owed by the Hayeses to MFA secured by MFA's security interest in the crops.

On June 11, 1991, the Jenkinses filed a lawsuit against MFA and alleged the Hayeses owed more than $36,000 [1] for rent

---

**1.** As of December 1991, the Jenkinses allege the total amount owed by the Hayeses with interest is $64,456.00.

secured by a statutory landlord's lien on the crops. In the alternative, the Jenkins' alleged conversion of their security interest and tortious interference with contract. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of MFA and found that the landlord's lien secured payment of rent for the year the crops matured, 1990. In so holding, the court noted that the Hayeses had paid the 1990 rent and found the Jenkins' statutory landlord's lien did not secure the 1989 rent. In addition, the court found that the Jenkinses had not given MFA sufficient notification of their consensual lien to gain priority over MFA.

The issue about notice given by the Jenkinses to MFA centers around certain provisions of the Food Security Act of 1985, 7 U.S.C. § 1631 (1988). The Food Security Act allows buyers of farm products to purchase the products free of perfected, consensual security interests even if the buyer knows of the security interest. 7 U.S.C. § 1631(d). For the prior secured party to protect itself against losing a security interest to a subsequent buyer of farm products, the secured party must give the buyer written notification of the security interest within one year before the sale. The written notice must include, among other items, the social security number of the debtor. The Jenkins' notice did not include the debtor's social security number.

In their first point, the Jenkinses allege the trial court erred in granting summary judgment because they had a landlord's lien for the 1989 rent and the Food Security Act did not provide a defense to the landlord's lien. Further, the point alleges the Jenkinses proved all the elements necessary to recover the wheat proceeds from MFA. For their second point of appeal, the Jenkinses allege MFA converted the security interest in the wheat because the Food Security Act did not protect MFA. Finally, the Jenkinses allege genuine issues of fact remain on their claim for tortious interference with the contract between the Hayeses and the Jenkinses.

A court may appropriately grant summary judgment if the pleadings, interrogatory answers, admission and affidavits show the case presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ernst v. Ford Motor Company*, 813 S.W.2d 910, 916 (Mo.App.1991). Review is done in the light most favorable to the party against whom the trial court entered summary judgment. *Id.* at 915. If the grant of summary judgment is sustainable on any theory, then the reviewing court must sustain the judgment of the trial court. *Id.* This case does not present a genuine issue as to any material fact; however, MFA was not entitled to judgment as a matter of law. The crux of this case involves the interpretation of the statute giving a landlord a lien on crops to secure rent and the statute used to enforce such a lien.

The lien statute provides: "Every landlord shall have a lien upon the crops grown on the demised premises in any year, for the rent that shall accrue for such year ... and such lien may be enforced by attachment in the manner provided herein." § 441.280, RSMo. The enforcement statute, § 441.240, RSMo.1986, provides under point two that "if any person shall buy any crop grown on demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in an action for the value thereof."

Although the attachment statute provides a cause of action against buyers who purchase crops grown on rented premises with unpaid rent, the enforcement statute applies only if the landlord had a lien on the crops grown.

"We are of the opinion that the proceeding by attachment for rent ... was intended to be a provision for the enforcement of the landlord's lien on the crop grown on the demised premises for the rent of the year in which such crop was grown ..."

*Garroutte v. White*, 92 Mo. 237, 241, 4 S.W. 681 (1887).

In this case, the Jenkinses would need a landlord's lien to enforce to use the attachment statute. The portion of the enforcement statute the Jenkinses use does not provide a separate cause of action for a person without landlord's lien. See § 441.-240 RSMo.[2] Consequently, this court must determine whether the Jenkinses had a statutory landlord's lien.

■ To determine whether the Jenkinses had a lien, this court must engage in statutory interpretation. Where a statute's language is clear and unambiguous, there is no room for construction. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence. *Id.* at 31. In this case, the parties advocate different meanings for the word "grown" as used in § 441.280 RSMo. In one sense, grown means fully grown or matured, *Webster's New Collegiate Dictionary*, 1005 (3d ed. 1981). In addition, "grown" when discussing grains means "having sprouted before reaping." *Webster's*, supra. In this case, one could argue the statute meant the landlord procures a lien when crops mature or when the crops sprout. As such, the term "grown" in the statute presents an ambiguity subject to statutory interpretation.

■ One rule or canon of construction, free of diversity or conflict, is of cardinal importance the intent of the legislature controls. *Remington v. City of Boonville*, 701 S.W.2d 804, 806 (Mo.App.1985).

"[I]n all these diverse and sometimes conflicting rules, the ultimate guide is the intent of the legislature; the other rules of construction may be considered merely as aids in reaching that result; and the purpose and object of the legislation should not be lost sight of."

*Tribune Publishing Co. v. Curators of University of Missouri*, 661 S.W.2d 575, 583 (Mo.App.1983) quoting *Edwards v. St. Louis County*, 429 S.W.2d 718, 722 (Mo. banc 1968). This court should use rules of construction that subserve rather than subvert the legislative intent. *Id.* In addition, this court should not construe a statute so as to work an unreasonable, oppressive or absurd result. *Tribune*, 661 S.W.2d at 583, *State ex rel. School Dist. of Kansas City v. Young*, 519 S.W.2d 328, 333 (Mo.App.1975). It is assumed that the intent of the legislature in enacting a statute is to serve the best interests and welfare of the citizenry at large. *Remington*, 701 S.W.2d at 806. To ascertain the intent of the legislature, the

2.  1. Any person who shall be liable to pay rent, whether the same be due or not, or whether the same be payable in money or other thing, if the rent be due within one year thereafter, shall be liable to attachment for such rent, in the following instances: (1) when he intends to remove his property from the leased or rented premises; (2) when he is removing his property from the leased or rented premises; (3) when he has, within thirty days, removed his property from the leased or rented premises; (4) when he shall in any manner dispose of the crop, or any part thereof, grown on the leased or rented premises, so as to endanger, hinder or delay the collection of the rent; (5) When he shall attempt to dispose of the crop, or any part thereof, grown on the leased or rented premises, so as to endanger, hinder or delay the collection the rent; (6) when the rent is due and unpaid, after demand thereof. Provided, if such tenant be absent from such leased premises, demand may be made of the person occupying the same.

2. The person to whom the rent is owing, or his agent, may, before a magistrate or the clerk of a court of record having jurisdiction of actions by attachment in ordinary cases, of the county which the premises lie, make an affidavit of one or more of the foregoing grounds of attachment, and that he believes unless an attachment issue plaintiff will lose his rent; and upon the filing of such affidavit, together with a statement of plaintiff's cause of action, such officer shall issue an attachment for the rent against the personal property, including the crops grown on the leased premises, but no such attachment shall issue until the plaintiff has given bond, executed by himself or by some responsible person for him, as principal, in double the amount sued for, with good security, to the defendant to indemnify him if it appear that the attachment has been wrongfully obtained; provided, if any person shall buy any crop grown on the demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in any action for the value thereof, to any party entitled thereto, or may be subject to garnishment at law in any suit against the tenant for the recovery of the rent.

court should look to the language of the statute and the plain and ordinary meaning of the words employed. *State ex rel. Metro. St. Louis v. Sanders,* 807 S.W.2d 87, 88 (Mo. banc 1991).

The Southern District in *Joeckel v. Gust,* 217 Mo.App. 495, 268 S.W. 888, 889 (1925), in dicta construing essentially the same language in the statute as it appears presently, found the landlord's lien statute did "not go to the extent of giving a landlord ... a lien on the crops of one year to secure the payment of rent for another year, but the statutory lien is restricted to the rent for the year in which the crops are matured." This court has recognized that a landlord's lien for rent attaches at the beginning of the tenancy. *Dunlap v. Dunseth,* 81 Mo.App. 17, 18 (1899). *See also Selecman v. Kinnard,* 55 Mo.App. 635, 638 (1894) (landlord had a lien for rent that covered all the crops including the immature crops). *See also* 49 Am.Jur.2d Landlord and Tenant § 688 (1970) (statutory lien of landlord for rent attaches at the beginning of the tenancy ... and in the case of crops, from the commencement of their growth.) Although the cases do not present facts similar to Jenkinses, the cases recognize that a landlord's lien attaches to immature crops.

 The purpose of the landlord's lien is to provide for the securing of rent. *Knox v. Hunt & Porter,* 18 Mo. 243, 244 (1853). The statute provides that the landlord has a lien in *any* year a crop is grown and does not restrict the lien to one year. § 441.280, RSMo. The statute contemplates that a tenant may harvest a crop grown over a split year period with the crop securing rent for any year. This court holds "grown" as used in the statute in its plain and ordinary meaning regarding grains means "having sprouted before reaping." If this court interpreted the statute as meaning mature as advocated by respondent, a tenant could intentionally extinguish a landlord's lien on crops for rent by destroying or removing the crops before maturity. The legislature could not have intended this absurd result. Further, the legislature could not have intended the landlord to lose his lien for rent on crops grown during one year but harvested the next year. *Joeckel* does not bind this court and this court declines to follow it. In this case, the Jenkinses planted the wheat in the fall of 1989. The wheat had sprouted in 1989; thus, the Jenkinses had a lien for 1989 rent. As such, the Jenkins' lien has priority over MFA's security interest.

■ The Food Security Act, which provides a defense to Article 9 security interests, does not provide a defense for MFA. The Act applies to security interests created by the seller. 7 U.S.C. § 1631(d), See also Drew L. Kershen & J. Thomas Hardin, *Congress Takes Exception to the Farm Products Exception of the UCC: Retroactivity and Preemption,* 36 Kan.L.Rev. 43, 45 (1987). In this case, the tenant did not consensually create the landlord's lien which operates as a matter of law. Further, Article 9 does not apply to landlord's liens. § 400.9–104, RSMo.1986.

As the appellant's first point is dispositive of this case, this court need not address appellant's other points. This cause is reversed with instructions to enter summary judgment in favor of the Jenkinses.

All concur.