**Sidney O. CANTRELL, Appellant,**

v.

**STATE BOARD OF REGISTRATION FOR THE HEALING ARTS, Respondent.**

**No. WD 57509.**

Missouri Court of Appeals, Western District.

June 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2000.

Application for Transfer Denied Oct. 3, 2000.

John David Landwehr, P. Pierre Dominique, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James O. Ertle, Asst. Atty. Gen., Jefferson City, Glenn E. Bradford, Edward F. Walsh, IV, Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

Sidney O. Cantrell appeals from circuit court's judgment affirming the decision of the State Board of Registration for the Healing Arts to discipline Cantrell's medical license. The board suspended Cantrell's medical license for 60 days, placed his license on probation with conditions for 10 years, and restricted him from prescribing, administering, dispensing, ordering or possessing controlled substances and certain other drugs.[1] In his appeal, Cantrell contends that the board violated the open meetings law by closing its deliberations at the disciplinary hearing and that the board's disciplinary action was arbitrary and unreasonable. Because, by law, Cantrell should not have been holding a license in the first place for the State Board of Registration for the Healing Arts to discipline, we deem the issue to be moot.

The board held its disciplinary hearing after the Administrative Hearing Commission found that the board had cause to discipline Cantrell's license under the practice act, Chapter 334, RSMo. The commission issued findings of fact, and Cantrell does not quarrel with the commission's findings.

The commission found that Cantrell was a licensed osteopathic physician and surgeon who practiced family medicine in Lawson. From the late 1980s until 1993, Cantrell was addicted to narcotics and alcohol. In 1990, Cantrell met a laboratory technician in the hospital where he was on staff, and she became his patient in May 1990.

From October 1990 to October 1993, Cantrell prescribed and administered excessive amounts of Demerol to the technician. He also prescribed medication for severe headaches, antidepressant medications, anti-anxiety agents and migraine medication, and he prescribed the analgesics Stadol and Nubain.

On May 11, 1993, Cantrell transferred the technician from Excelsior Springs Medical Center to Research Medical Center to consult with Dr. David L. Smith. On May 14, 1993, doctors discharged the technician from the hospital at her insistence. Her discharge diagnosis was depression; drug seeking behavior; previous history of intravenous and intramuscular drug abuse, Stadol; psychogencic purpura; cephalgia; history of ulcerative skin lesions, probably self-inflicted; and questionable history of childhood sexual abuse. By letter dated May 20, 1993, Smith informed Cantrell of his opinion that the technician had a drug problem. Smith wrote, "Because of her history of drug-seeking behavior and the out-of-hospital use of Stadol without a physician prescription, I think it is very important to minimize any narcotics or other dependency-inducing drugs that this patient could come in contact with." After May 20, 1993, Cantrell continued to prescribe Demerol to the technician. He also prescribed 70 tablets of a schedule II drug containing Hydrocodone and two prescriptions for Stadol. On October 16, 1993, the technician died of an overdose of morphine.

In an unrelated case, on January 21, 1994, Cantrell pleaded guilty to the Class

---

1. The board prohibited Cantrell from prescribing, administering, dispensing, ordering, or possessing Altram, Fioricet, Nubain, Soma and Stadol.

D felony of fraudulently attempting to obtain Demerol, a schedule II controlled substance. After the guilty plea hearing, the board ordered Cantrell to appear on July 29, 1994, for a hearing. The board determined that Cantrell's license was subject to discipline pursuant to § 334.103.1, RSMo 1986, which says:

> The license of a physician shall be automatically revoked at such time as the final trial proceedings are concluded whereby a physician has been adjudicated and found guilty, or has entered a plea of guilty or nolo contendere, in a felony criminal prosecution under the laws of the state of Missouri, the laws of any other state, or the laws of the United States of America for any offense reasonably related to the qualifications, functions or duties of a physician[.]

On September 27, 1994, the board revoked Cantrell's license but stayed the revocation and placed his license on probation with conditions for five years. The board also ordered Cantrell not to prescribe or administer any controlled substances, Stadol or Nubain.

On July 24, 1995, the board initiated a new disciplinary action against Cantrell's license by filing a complaint with the Administrative Hearing Commission. The charges related to Cantrell's treatment of the technician. After a hearing, the commission found Cantrell's license subject to discipline. The board then held a hearing on July 18, 1997, to determine the discipline. The board issued a second disciplinary order, suspending Cantrell's medical license for a period of 60 days, placing his license on probation with conditions for a period of 10 years, and restricting him from prescribing, administering, dispensing, ordering or possessing controlled substances and certain other drugs.

■ Cantrell appeals from the board's second disciplinary order. Before we reach the issues that he raises, however, we consider, *sua sponte*, whether the board acted within its jurisdiction when it stayed its revocation and placed Cantrell's license on probation on September 27, 1994, and when it entered a second disciplinary order against Cantrell's license. If the board lacked jurisdiction, we would be deprived of jurisdiction to entertain this appeal on the merits. *See Two Pershing Square, L.P. v. Boley,* 981 S.W.2d 635, 639 (Mo.App.1998) (judgment entered in excess of, or beyond, jurisdiction of the circuit court is void and deprives appellate court of jurisdiction to review the merits). We have a duty to determine our jurisdiction *sua sponte. Chromalloy American Corporation v. Elyria Foundry Company,* 955 S.W.2d 1, 3 (Mo. banc 1997). If the board exceeded its jurisdiction to assess the discipline and if the board exceeded and violated its statutory authority, its acts are void *ab initio. Cohen v. Missouri Board of Pharmacy,* 967 S.W.2d 243, 249 (Mo.App.1998).

■ When Cantrell pleaded guilty and was convicted of fraudulently attempting to obtain a controlled substance, § 334.103.1 required that his license be "automatically revoked" if the offense was reasonably related to the practice of medicine. In its ordinary sense, "automatic" means self-acting. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 148 (1971). A license cannot revoke itself.

■ Reading the statute in a manner that is consistent with reason, *David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991), *overruled on other grounds, Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907 (Mo. banc 1997) ("law favors statutory construction that harmonizes with reason"), we interpret "automatically" to mean that the General Assembly was restricting the board's discretion. The board's only determination was whether Cantrell was convicted of a felony that reasonably related to the qualifications, functions or duties of a physician. The only defenses that Cantrell could have raised were that he was not convicted and

that the felony did not reasonably relate to his practice of the healing arts.

■ The board found that Cantrell's conviction was reasonably related to the qualifications, functions or duties of a physician and revoked his license, and Cantrell did not contest this finding. The board, however, exercised unauthorized discretion in staying its revocation of Cantrell's license and placing Cantrell's license on probation.[2] Section 334.103.1 mandated only one option, revocation, and the board had no authority to stay its revocation of Cantrell's license and to place the license on probation. To rule otherwise would allow the board to circumvent the General Assembly's intent in § 334.103.1 that the license be revoked. When an administrative agency usurps its authority, its unlawful act is void. *Cohen*, 967 S.W.2d at 248–49. Hence, that portion of the board's order staying the revocation of Cantrell's license and placing the license on probation is void. Cantrell's license was revoked as of September 27, 1994.

■ In the ordinary sense, a revoked license "is cancelled, terminated, and void." *State of Missouri, ex rel. Marler v. State Board of Optometry*, 898 S.W.2d 559, 563 (Mo.App.1994). We recognize that the General Assembly in § 334.100.4, RSMo Supp.1988,[3] gave the board the authority to reinstate a revoked license. Section 334.100.4 said, "In any order of revocation, the board may provide that the person may not apply for reinstatement of his license for a period of time ranging from two to seven years following the date of the order of revocation."[4] The board in this case, however, did not attempt to re-

strict Cantrell from applying for reinstatement of his license, but instead allowed him to continue practicing medicine by placing his license on probation subject to certain conditions for a five year period. Section 334.103.1 mandated that Cantrell's license be revoked, and the board had no authority to stay its revocation and place Cantrell's license on probation.

■ Hence, because the portion of the board's order staying the revocation of Cantrell's license and placing it on probation was void, Cantrell no longer had a license for the board to discipline on July 24, 1995, when it initiated the new disciplinary proceedings at issue in this case. We, therefore, have no reason to concern ourselves with the correctness of the board's proceedings on July 18, 1997— whether its deliberations of its findings of fact and conclusions of law should have been open to the public or whether its disciplinary action was arbitrary and unreasonable. Cantrell is not the holder of a license because the General Assembly mandated that it be revoked.

We, therefore, dismiss Cantrell's appeal as moot.

PATRICIA BRECKENRIDGE, Chief Judge, concurs.

HAROLD L. LOWENSTEIN, Judge, dissents in a separate opinion.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully dissent. The majority contends the State Board of Registration for the Healing Arts "exercised unautho-

---

2. The dissent points out that no definitive law exists regarding whether the board has the authority to stay a revocation. Whatever may be said about the board's authority to stay a revocation generally, the General Assembly's mandating automatic revocation in § 334.103.1 precludes a stay in this case.

3. This provision is now codified as § 334.100.5, RSMo Supp.1999.

4. The dissent questions whether the majority would take exception to the board's actions in Francois v. State Bd. of Registration for the Healing Arts, 880 S.W.2d 601 (Mo.App.1994), where the board revoked a doctor's license and determined that the license would be ineligible for reinstatement for at least two years. Because the General Assembly has specifically provided the board with this authority in § 334.100.5, the board's action would not be outside its jurisdiction.

rized discretion in staying its revocation of Cantrell's license." In support of this argument, the majority relies upon statutory language that the license be "automatically revoked" and contends, "we interpret 'automatically' to mean that the General Assembly was restricting the board's discretion." Therefore, "the board's only determination was whether Cantrell was convicted of a felony that reasonably related to the qualifications, functions or duties of a physician."[1] There appears to be no definitive law regarding whether or not the Board has the authority to stay a revocation. The Board here did what the statute required; it revoked Dr. Cantrell's license. Whether or not the Board could go beyond that revocation has not been determined. Consequently, due to the lack of authority on the subject, I would decide this case on its merits.

It is Dr. Cantrell's first assertion that the Board utilized improper procedure in the disciplinary proceeding regarding his medical license by violating Missouri's Sunshine Law, Chapter 610 (also referred to as the "Open Meeting Law"). § 610.011.1 reads:

It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law.

Dr. Cantrell asserts the Board held their disciplinary deliberations in a closed meeting, thereby violating the Sunshine Law's prescription that all public meetings of public governmental bodies be open to the public.[2]

Each of the parties cite to *Christiansen v. Missouri State Bd. of Accountancy*, 764 S.W.2d 943 (Mo.App.1988), in which the State Board of Accountancy held a closed disciplinary meeting regarding the appellant accountant. In its holding, the court discussed the applicability of the Sunshine Law to disciplinary proceedings in general. The court wrote:

A study of Chapter 610 leads to the conclusion that it neither intends nor prescribes application to disciplinary proceedings of any licensee...To be sure, respondent or any like licensing agency can conduct closed meetings when such meetings pertain to disciplinary matters. Such meetings are not within the prescription of Chapter 610...Chapter 610 is held not to apply to any disciplinary proceedings involving any licensee brought before the Administrative Hearing Commission or otherwise conducted by any licensing agency.

*Id.* at 951. The *Christiansen* court held the Sunshine Law not to apply to situations such as the one presently before the court.[3] That is, the court specifically held that Chapter 610 does not apply to disci-

---

**1.** The majority pronounces that the Board's discretion is limited and that § 334.103.1 "mandate[s] only one option, revocation." But see *Francois v. State Board of Registration for the Healing Arts*, 880 S.W.2d 601 (Mo.App. 1994) in which the Board revoked doctor's license and then "determined Dr. Francois would be ineligible for reinstatement for at least two years." *Id.* at 602. Was this action also beyond the Board's discretion? By the majority's analysis, the Board had only *one* option, revocation, and *one* determination, whether or not the doctor was convicted of a felony reasonably related to the qualifications, functions or duties of a physician. It would appear improper, under the majority's analysis, for the Board in *Francois* to have gone further than the one option and determination it was authorized to make and place a qualifi-

cation upon reinstatement. Though the issue was not decided by the Court of Appeals in *Francois*, and presumably was not raised by either party, the court did not, as here, *sua sponte* determine this to be a void act and outside the Board's jurisdiction.

**2.** Dr. Cantrell *only* claims error with regard to the closing of the deliberative portion of the disciplinary proceeding, not with the closing of an entire proceeding.

**3.** Accordingly, the *Christiansen* opinion provides the catalyst by which § 610.011.1 is circumvented. In other words, it is "otherwise provided by law," within *Christiansen*, that the deliberation portion of disciplinary proceedings may be closed to the public.

plinary proceedings before licensing boards.

Before examining the parties' arguments regarding *Christiansen,* I find it necessary to acknowledge another opinion of this court, *Remington v. City of Boonville,* 701 S.W.2d 804 (Mo.App.1985), which was cited to by neither party. In that case applicant appealed the denial of a building permit to the local board of adjustment. After conducting a hearing and receiving evidence, the board closed the meeting for deliberations. Applicant appealed, asserting the foregoing as error. The board contended it was exempt from the Sunshine Law because "they were acting in a quasi-judicial capacity when they went into executive session to deliberate and vote on the matter." *Id.* at 805. In rejecting the board's argument, the court wrote:

> Administrative bodies, even when acting in a quasi-judicial capacity, cannot circumvent compliance with the "open meetings" requirements...by riding on the "coattails" of legislative exclusion of the judiciary. Both the letter and spirit of [the Sunshine Law]...bespeak of a legislative intent to subject all meetings of Boards of Adjustment, including deliberations while acting in a quasi-judicial capacity, to the "open meeting" requirements of Missouri's "Sunshine Law".

*Id.* at 807. The court's holding in *Remington* was specifically limited in applicability to "Boards of Adjustment" and did not involve a disciplinary proceeding before a licensing board. This court finds *Christiansen,* an opinion of this court later in time than *Remington* and more directly on point, to be applicable in the case at bar.

Regarding *Christiansen,* Dr. Cantrell argues its holding is here inapplicable. These assertions are unpersuasive. *Christiansen* is the latest, on point opinion of this court. Though the reasoning used by the court in *Christiansen* is somewhat vague, its holding continues to be good law. This court in *Christiansen* clearly held that Chapter 610 does not apply to "disciplinary proceedings of any licensee." *Christiansen,* 764 S.W.2d at 951. Due to this court's holding in *Christiansen,* the Board did not violate Missouri's Sunshine Law in closing the deliberative portion of the disciplinary proceeding regarding Dr. Cantrell's medical license.

Dr. Cantrell's second point is that the Board acted arbitrarily by imposing a more severe sentence upon him in the second disciplinary proceeding of his license. This point has no merit. The charges against Dr. Cantrell at each proceeding were not the same. Dr. Cantrell was found to be subject to discipline on multiple basis at the second proceeding. By contrast, he was only subject to discipline on one basis at the first proceeding. Due to the additional violations Dr. Cantrell was found to have committed, it was not unreasonable or arbitrary for the Board to impose a harsher punishment at the second proceeding. This point should be denied.

The judgment of the trial court should be affirmed.