# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3471

_____

Jerry D. Crum,                                    *
                                                  *
    Plaintiff/Appellant,                      *
                                                  *    Appeal from the United States
Douglas C. Richards,                              *    District Court for the
                                                  *    Western District of Missouri.
           Plaintiff,                     *
                                                  *
    v.                                        *
                                                  *
Trish Vincent, Missouri Director of               *
Revenue; Missouri State Board of                  *
Registration for the Hearing Arts,                *
                                                  *
    Defendants/Appellees.                     *

_____

Submitted: March 14, 2007
Filed: July 27, 2007

_____

Before COLLOTON, HANSEN, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Dr. Jerry D. Crum's medical license was revoked under Missouri Revised Statutes section 324.010 (Supp. 2003), because he failed to file state income tax returns for 2000, 2001, and 2002. Although Crum's license was reinstated after he

belatedly filed his returns, he brought this action against the Missouri Director of Revenue ("the Director") and the Missouri Board of the Healing Arts ("the Board"). The lawsuit seeks a declaration that section 324.010 violated several of Crum's rights under federal and Missouri law, including his rights to due process and equal protection, and that the revocation of his license was void. He also seeks damages and a mandatory injunction directing the Board to expunge all records of the revocation. The district court[1] granted the defendants' motion for summary judgment and dismissed the case.  Crum appeals, and we affirm.

## I.

Crum has been licensed to practice medicine in Missouri since 1998.  Although he knew he was required to file income tax returns with the Missouri Department of Revenue ("the Department"), he did not do so for tax years 2000, 2001, and 2002.  He later explained that he did not consider filing his returns to be a "priority," because he believed that he was entitled to a refund for each year.

In 2003, the Missouri General Assembly passed House Bill 600, section 2 of which was codified as Missouri Revised Statutes section 324.010.  *See* 2003 Mo. Legis. Serv. H.B. 600, § 2 (West).  Section 324.010 requires many Missouri licensing boards to report the names and social security numbers of licensees to the Director. If the Director discovers that any licensee is delinquent on state taxes or has failed to file a tax return in the last three years, the Director must send the licensee a notice indicating this delinquency or failure.  As of 2003, unless the Director could verify that the licensee had made arrangements to remedy the delinquency or failure to file,

---

[1]The Honorable Nanette Laughrey, United States District Judge for the Western District of Missouri.

the licensee's license was revoked ninety days after the mailing of the notice.[2]  Other sections of House Bill 600 provided for sanctions on state employees, judges, and elected state officials who fail to pay taxes or file their tax returns.  *See* 2003 Mo. Legis. Serv. H.B. 600, § 1 (West), codified as Mo. Rev. Stat. § 105.262 (Supp. 2003).

In late 2003, the Board sent Crum a license renewal packet containing a note that explained the operation of section 324.010.  On January 26, 2004, Crum signed a license renewal application included in the packet and mailed it to the Board.

On January 21, 2004, shortly before Crum submitted his renewal application, the Department mailed Crum notices that he had not filed his state income tax returns for 2000, 2001, and 2002.  These notices also stated that if he did not file his returns within ninety days, his Missouri medical license would be revoked by operation of law.

The Department received only an irrelevant federal tax form in response, with no explanation of Crum's failure to file returns or why he had sent the federal form.  The Department then sent Crum another letter on February 10, 2004, explaining that it still required his Missouri tax returns with all schedules and W-2 forms.

After receiving no further response from Crum, on April 7, 2004, the Director mailed Crum "Notices of Deficiency" for tax years 2000, 2001, and 2002.  These notices calculated Crum's total tax liability at $47,679.15, including interest.  They represented Crum's final notice to pay the taxes, and advised Crum that he could object by filing a protest with the Department.  They also informed Crum that he must respond in some form by April 20.  If he did not respond, the Notices of Deficiency automatically would become a final assessment of his tax liability after sixty days,

---

[2] Section 324.010 has since been amended so that licenses are now suspended rather than revoked.  *See* 2004 Mo. Legis. Serv. H.B. 978 (West).

-3-

without any further notice to him. Crum acknowledges that he received these deficiency notices and that he made no effort to protest or appeal.

Finally, on June 25, 2004, the Director sent a Certificate of Non-Compliance to the Board. The Certificate indicated that ninety days had elapsed since the Department informed Crum that he had failed to file tax returns, and that Crum had not remedied this failure. Accordingly, the Certificate concluded, "Pursuant to Section 324.010, RSMo., the professional license . . . shall be REVOKED." The Board then mailed Crum a letter on June 29, 2004, informing him that his medical license was "REVOKED by operation of law as of July 21, 2004." After Crum's license was revoked on July 21, the Board reported this revocation to the Healthcare Integrity and Protection Data Bank, the National Practitioner Data Bank, and the Federation of State Medical Boards of the United States.

Crum claims that before he received the June 29 letter from the Board, he was unaware that his license could be revoked if he failed to file his tax returns. Nonetheless, he apparently took no action in response to this letter until July 21, when he called the Department to request an extension of time to file his returns and was informed that the Department did not grant extensions for House Bill 600 accounts. Crum did not actually file his returns until September 30, 2004, when he submitted them in person at the Department of Revenue's Jefferson City office. When he did so, the Department issued Crum a Certificate of Tax Compliance. Crum then presented this certificate to the Board, which reinstated his license the same day.

II.

Crum claims that section 324.010 deprives a licensee of property without due process of law, in violation of the Fourteenth Amendment and article I, section 10 of the Missouri Constitution. Generally speaking, these constitutional provisions prohibit the State from depriving a person of his property without notice and an

-4-

opportunity to be heard. *Jones v. Flowers*, 126 S. Ct. 1708, 1712 (2006); *Conseco Fin. Servicing Corp. v. Missouri Dept. of Revenue*, 195 S.W.3d 410, 415 (Mo. 2006). Crum contends that section 324.010 deprived him of a property right in his license, without either the requisite notice or opportunity to be heard. The defendants concede that Crum has a property interest in his license, but argue that section 324.010 provides sufficient notice and an opportunity for a hearing.

The Due Process Clause requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It does not require a showing by the State that an interested party received actual notice, *Jones*, 126 S.Ct. at 1713, and "[n]otice by mail is ordinarily presumed to be constitutionally sufficient." *Nunley v. Dep't of Justice*, 425 F.3d 1132, 1136 (8th Cir. 2005).

Section 324.010 requires that the Department inform a licensee of his tax deficiency and then wait ninety days – to allow the licensee to cure the deficiency – before a license is revoked. Crum received notice three times: the January notices, the February letter, and the April notices. He concedes that the notices were sent to the correct address and acknowledges receiving the April notices. Although he suggests that his staff may have misplaced the other notices, he has not identified any unusual circumstances that would have made notice by mail inadequate. *Cf. Jones*, 126 S.Ct. at 1716. Thus, the State repeatedly provided Crum with notice that he had failed to file his tax returns and specifically gave notice in the January mailings that this failure could lead to the revocation of his license. Crum therefore received constitutionally adequate notice.

Crum also claims that the State could not revoke his license until he received a hearing. The State satisfied the requirements of due process, however, by giving Crum an *opportunity* for a hearing at a meaningful time and in a meaningful manner.

*See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The tax deficiency notices mailed to Crum in April explained how he could request a hearing to challenge the Department's assessment. Crum never received such a hearing simply because he never requested one.

We also reject Crum's argument that he was constitutionally entitled to opportunities for two hearings – one to challenge the tax deficiency and another to challenge the revocation of his license. So long as one hearing will provide the affected individual with a meaningful opportunity to be heard, due process does not require two hearings on the same issue. *See Goldberg v. Kelly*, 397 U.S. 254, 267 n.14 (1970); *cf. Mitchell v. Fankhauser*, 375 F.3d 477, 481 (6th Cir. 2004) (holding a post-termination hearing was required where a pre-termination hearing was insufficiently meaningful). Both the Director's finding of a tax deficiency and the subsequent license revocation had the same factual predicate – Crum's failure to file his tax returns. A license revocation hearing could add nothing to a tax deficiency hearing in this case, because the outcome of the tax hearing would necessarily determine the outcome of the revocation hearing. Crum had notice that he could lose his license if he failed to file his returns, and he was thus apprised of the matters that would be at stake in a tax deficiency hearing. Because Crum received both notice and an opportunity for a hearing, he was not deprived of property without due process of law.

Crum also claims that section 324.010 infringes his right to equal protection of the laws under the Fourteenth Amendment and article I, section 2 of the Missouri Constitution. He argues that section 324.010 violates equal protection in two ways. First, the section does not apply to certain professional licensees, such as security brokers and teachers, or to practitioners of unlicensed professions. Second, state employees, judges, and certain elected officials face different sanctions if they fail to file their returns. State employees, for example, are terminated. *See* Mo. Rev. Stat. § 105.262 (Supp. 2003).

-6-

Neither of these distinctions violates the constitutional guarantee of equal protection. As Crum has not shown that he is a member of a suspect class or that a fundamental right is at issue, his equal protection claim is analyzed under the rational basis test. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Under that analysis, "we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." *Gilmore v. County of Douglas*, 406 F.3d 935, 939 (8th Cir. 2005) (internal quotation omitted). A statutory distinction will not be set aside "if any state of facts reasonably may be conceived to justify it." *Bowen v. Gilliard*, 483 U.S. 587, 601 (1987) (internal quotation omitted); *see also Snodgras v. Martin & Bayley, Inc.*, 204 S.W.3d 638, 641(Mo. 2006).

Section 324.010 satisfies this deferential standard. As the district court noted, several plausible reasons exist for imposing higher penalties on licensed professionals who shirk their Missouri tax obligations than on those without licenses. The General Assembly may have perceived licensed professionals as more financially secure and better educated, thus increasing the amount of taxes they likely owe and making their neglect less excusable. Similarly, since state boards already monitor licensees, limiting section 324.010 to licensees may have been a more efficient way to increase tax compliance than a statute that applied more broadly. The General Assembly's decision to sanction judges and elected officials differently from licensees is readily explained by the limitations the Missouri Constitution places on the removal of judges and elected officials. *See* Missouri Const. art. V, § 24.3; art. VII, § 12. The differing procedure for state employees – which is arguably more onerous than that faced by licensees, *see* Mo. Rev. Stat. § 105.262.2 – can rationally be explained by the State's special interest in ensuring that its own employees comply with the tax code.

We also reject Crum's vagueness challenge. A statute is impermissibly vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also*

*State v. Allen*, 905 S.W.2d 874, 877 (Mo. 1995). The conduct prohibited by section 324.010 is plain from its language – failing to pay taxes or file a tax return when obligated to do so under Missouri law. Section 324.010 does not encourage arbitrary or discriminatory enforcement. The Director is required to identify and notify those licensees who have failed to fulfill these tax obligations. If these licensees fail to remedy this failure, then the revocation of their license is automatic. The Director retains no discretion that might lead to arbitrary enforcement.

## III.

Crum also brought a series of challenges to section 324.010 based exclusively on Missouri law. We consider each in turn.

First, Crum contends that the license revocation was void because he was denied his right to appeal the Director's finding that he had failed to file his tax returns. Section 621.050.1 of the Missouri Revised Statutes states that "[e]xcept as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue." Any decision of the Director also must provide the affected party notice of this right to appeal. Mo. Rev. Stat. § 621.050.1 (2000). Crum argues that the "Certificate of Non-Compliance" that the Director sent to the Board on June 25, 2004, was such a "finding, order, [or] decision," and that the Director violated section 621.050.1, because Crum was never informed of his right to appeal the decision.

We disagree. Before issuing the Certification of Non-Compliance, the Director sent Crum three tax deficiency notices on April 7, 2004, each of which explained his right to appeal. These findings of tax deficiency were the last "findings" the Director made for the purposes of section 621.050. The tax deficiency notices informed Crum that if he did not appeal the findings, they would become a final assessment of his tax

deficiency, by operation of law, sixty days after they were mailed. *See* Mo. Rev. Stat. § 143.621 (2000). Since Crum did not appeal the deficiency notices, the assessments became final on June 6, and no further findings by the Director were necessary. Accordingly, Crum's tax deficiency already had been established under Missouri law when the Director issued the Certificate of Non-Compliance on June 25. The Certificate merely recognized this deficiency's existence, and Crum was not entitled to appeal the issuance of the Certificate.

Second, Crum argues that his license was never revoked, because the Director did not have legal authority to revoke his license and the Board never voted to do so. We conclude that the license was properly revoked. As the June 29 letter from the Board stated, Crum's license was revoked "by operation of law." Once initial notice is given, section 324.010 requires no action by either the Director or the Board to revoke a license: "In case of such delinquency or failure to file, the licensee's license shall be revoked within ninety days after notice of the such delinquency or failure to file." After the Director informed Crum of his failure to file, and ninety days elapsed without Crum taking action to correct the deficiency, the license was automatically revoked by law. The Director and the Board merely recognized this revocation. Crum contends that *Cantrell v. State Bd. of Registration for the Healing Arts*, 26 S.W.3d 824 (Mo. Ct. App. 2000), holds that a license cannot be revoked without action by the Board, but *Cantrell* is inapposite. *Cantrell* was decided under sections 334.100 and 621.045, which, as we discuss below, apply to different situations than section 324.010, and establish a different procedure for revocation.

Third, Crum argues that his license could not be revoked without a finding by the Administrative Hearing Commission that cause existed to revoke it. Crum bases this argument on sections 334.100 and 621.045 of the Missouri Revised Statutes. Section 621.045 states: "The administrative hearing commission shall conduct hearings and make findings of fact and conclusions of law in those cases when, under the law, a license issued by [the Board or other state licensing board] may be revoked

or suspended . . . ." Section 334.100 in turn lists numerous grounds on which licensees may be disciplined, including drug abuse, fraud, and violation of various professional standards, but it does not include tax delinquency or the failure to file tax returns. Mo. Rev. Stat. § 334.100.2 (2000). It then provides that "[u]pon a finding by the administrative hearing commission that the grounds . . . for disciplinary action are met, the board may . . . revoke the person's license." Mo. Rev. Stat. § 334.100.4 (2000). Based on this statutory scheme, the Supreme Court of Missouri held that "[t]he Board may discipline a physician *only* if the Administrative Hearing Commission first finds cause for discipline." *Bodenhausen v. Mo. Bd. of Registration for the Healing Arts*, 900 S.W.2d 621, 622 (Mo. 1995). Because Crum's license was revoked without a finding by the Administrative Hearing Commission, he argues that the revocation violated sections 334.100 and 621.045.

Crum is incorrect, however, because he reads sections 324.010, 334.100, and 621.045 in isolation. As the district court noted, Missouri law requires courts to read statutes *in pari materia*, harmonizing sections covering the same subject matter if possible. *See, e.g., Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. 2003). When doing so, courts are not to interpret statutes in a "hyper-technical" manner, but rather in a manner that is "reasonable, logical, and . . . give[s] meaning to the statutes*." See In re Boland*, 155 S.W.3d 65, 67 (Mo. 2005). Thus, if possible, the provisions of sections 334.100 and 621.045 must be reconciled with section 324.010's requirement that the license of a licensee who has not filed his tax return be revoked by operation of law. When a general and a specific statute cannot be fully reconciled, "the more specific prevails over the more general." *KC Motorcycle Escorts, L.L.C. v. Easley*, 53 S.W.3d 184, 187 (Mo. Ct. App. 2001).

The district court correctly reconciled the statutes here, holding that a hearing before the Administrative Hearing Commission was not required to revoke Crum's license. A hearing before the Administrative Hearing Commission is required when a licensee has been accused of one of the disciplinary infractions listed in

section 334.100. There is practical reason for this statutory directive: The Administrative Hearing Commission must determine whether the licensee is in fact guilty of one of the infractions listed in section 334.100. No such findings are necessary, however, when a license is revoked under section 324.010. A license cannot be revoked under section 324.010 until the Director has found that the licensee has failed to pay his taxes or to file his tax return, but the licensee is entitled to appeal this finding to the Administrative Hearing Commission when it is made. We do not think the Missouri General Assembly intended to grant a licensee the opportunity to present exactly the same factual question to the Administrative Hearing Commission a second time before his license is revoked. If the General Assembly had intended to subject license revocations for tax delinquency and failure to file to the requirements of sections 334.100 and 621.045, it could simply have added these wrongs to section 334.100's preexisting list of infractions, instead of establishing a new, separate revocation procedure under section 324.010. Therefore, we hold that the State was not required to conduct a hearing before the Administrative Hearing Commission before Crum's license was revoked.[3]

Crum next contends that section 324.010 is "retrospective in its operation," and thus unconstitutional under article I, section 13 of the Missouri Constitution. His argument is premised on the fact that section 324.010 was passed in 2003, while he was sanctioned for failing to file tax returns in 1999, 2000, and 2001.

_____

[3]Crum raises no argument that he remedied or arranged to remedy his failure to file tax returns within ninety days of receiving notice of this failure. He does not contend, for example, that the Director failed to "verify" such remedial action in accordance with section 324.010, or that the revocation of his license occurred despite such verification by the Director, in contravention of section 324.010. We need not address, therefore, whether a licensee in one of those situations would have an opportunity for administrative review or judicial review pursuant to section 621.050 or section 536.150, given that the issue in dispute would be different from the question here – whether the Director was correct in the first instance to find that the licensee failed to file his tax returns.

-11-

Under Missouri law, a law is generally retrospective only if it impairs a "vested right." *See La-Z-Boy Chair Co. v. Dir. of Econ. Dev.*, 983 S.W.2d 523, 525 (Mo. 1999). An individual does not have a vested right to be free from suit or sanction for a legal violation until the statute of limitations for that violation has expired. *See Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. 1993). Missouri has no statute of limitations for the failure to file a tax return. "If no return is filed . . . a notice of deficiency may be mailed to the taxpayer at any time." Mo. Rev. Stat. § 143.711.3 (2000). Thus, Crum had no vested right to be free from sanction for his failure to file his tax returns, and punishing him for his failure was not unconstitutionally retrospective.

For all of these reasons, we conclude that the State of Missouri properly revoked Crum's medical license for non-payment of taxes. Thus, contrary to Crum's claims, this revocation was a "final adverse action" within the meaning of 42 U.S.C. § 1320a-7e(g)(1)(A)(iii)(II) (2000), and the revocation was properly reported under § 1320a-7e(b)(1) to the Healthcare Integrity and Protection Data Bank, the National Practitioner Data Bank, and the Federation of State Medical Boards of the United States.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____