

# In the Missouri Court of Appeals
## Eastern District

DIVISION ONE

| | |
|---|---|
| JANINE MASSEY, et al., | ) ED102793 |
| | ) |
| Respondents, | ) Appeal from the Circuit Court |
| | ) of St. Louis County |
| vs. | ) |
| | ) Honorable Michael D. Burton |
| NORMANDY SCHOOLS COLLABORATIVE, | ) |
| et al., | ) |
| | ) |
| Appellants. | ) FILED: June 7, 2016 |

Defendants Normandy School Collaborative ("the Collaborative")[1], some of the

"receiving districts" to which Normandy students transferred or wished to transfer ("Receiving

Districts"), the Missouri State Board of Education ("State Board"), and the Missouri Department

of Elementary and Secondary Education ("DESE") (collectively referred to as "Appellants"),

appeal from the trial court's February 11, 2015 judgment ("Judgment"), granting permanent

injunctive and declaratory relief to the parents, guardians, and student plaintiffs ("Plaintiffs")

who had filed suit against the defendants, Pattonville School District, Ritenour School District,

Ferguson-Florissant School District, and Francis Howell School District,[2] because the students

---

[1] The Collaborative is the former Normandy School District located in St. Louis County.
[2] The Ferguson-Florissant School District was added as a defendant on or around August 19, 2014, after the trial court entered its decision in favor of the plaintiffs.

wished to attend a transfer school pursuant to Section 167.131, RSMo 2000,[3] for the 2014-15 school year but were denied that opportunity when the State Board voted to grant a waiver, giving the Collaborative new accreditation as a state oversight district such that it was not subject to the requirements of Section 167.131. The trial court's Judgment was based on the grounds that the State Board had not legally accredited the Collaborative and students residing within the boundaries were eligible to transfer to accredited schools in the same or adjoining counties pursuant to Section 167.131, and the Collaborative was required to pay the costs of tuition and transportation. We affirm the trial court's Judgment.

## I. Background

For the December 18, 2014 hearing conducted prior to the ruling on appeal, the parties filed a detailed "Stipulation of Facts between Plaintiffs and all Defendants regarding Plaintiffs' Petition for Permanent Injunction." Accordingly, the facts are not in dispute.

From 2008 through 2012, none of the Missouri School Improvement Program's ("MSIP's") student achievement results for mathematics and communication arts (i.e., English) were met in the Normandy School District. These results were generated from scores attained from the standardized "Missouri Assessment Program" ("MAP") tests of students from the third to the eleventh grades. A district must meet at least one MAP standard to be even "provisionally accredited," which was the Normandy School District's classification for many years leading up to this point. The Normandy School District was deemed "provisionally accredited" in April 1996 as determined by a "First Cycle MSIP 1990-1996," as well as in March 2001 as determined by a "Second Cycle MSIP 1996-2001," and in April 2006 as determined by a "Third Cycle MSIP 2001-2006."

---

[3] All statutory references are to RSMo 2000, unless otherwise indicated.

2

On September 18, 2012, the State Board classified the Normandy School District as unaccredited, as of January 1, 2013. Six months later, the Missouri Supreme Court decided Breitenfeld v. Clayton School District, 399 S.W.3d 816 (Mo. banc 2013), which ended litigation over the application of Section 167.131, to allow students who reside in an unaccredited school district to transfer to accredited school districts in the same or an adjoining county. The transferring home school district is responsible for the cost of the child's education, according to Section 167.131. The Missouri Supreme Court's prior decision in Turner v. School District of Clayton, 318 S.W.3d 660 (Mo. banc 2010), upheld the statute and clarified that accredited school districts had no discretion to deny admission to a transferring student from an unaccredited district, if so chosen by the student. Id. at 662-63.

Given the Normandy School District's "unaccredited" status, for the 2013-14 school year, approximately 930 district students transferred pursuant to Section 167.131 to the schools of defendants Pattonville School District ("Pattonville"), Ritenour School District ("Ritenour"), Ferguson-Florissant School District ("Ferguson-Florissant"), and Francis Howell School District ("Francis Howell"), among others. Most students (approximately 430) transferred to Francis Howell, while the rest transferred to seventeen other school districts in St. Louis County and adjoining counties for the 2013-14 school year. Among these students were the children of parent Plaintiffs in this action, which children successfully completed their 2013-14 school year. In October 2013, DESE issued a news release stating that state education officials would be holding meetings in November and December of 2013 to discuss the accreditation status and potential options for the future of the Normandy School District. In February 2014, the State Board directed the Commissioner of Education to establish a Normandy Transition Task Force to consider options and develop recommendations for the governance and operation of the

3

Normandy School District in the event of a lapse. By the end of the 2013-14 school year, 786 students had completed Intent to Return forms to transfer again from the Normandy School District for the 2014-15 school year. Additionally, approximately 74 new families also applied to have their children transfer during the 2014-15 school year.

According to the Missouri Code of State Regulations' rule that addresses the MSIP, 5 C.S.R. 20-100.105(2), DESE must annually review the performance of all school districts in Missouri as a means of guiding DESE in determining those districts in need of improvement and in determining the level of intervention, if necessary. The State Board must assign to each school district one of four classification designations: unaccredited, provisionally accredited, accredited, and accredited with distinction. 5 C.S.R. 20-100.105(3).[4] The rule also addresses the means by which the State Board can change the designations. Specifically, an unaccredited school district could become accredited if it "demonstrated significant change in student performance over multiple years." 5 C.S.R. 20-100.05(5)(B).[5]

In February 2014, the State Board directed the commissioner of DESE to establish a Normandy Task Force ("Task Force"), comprised of numerous education experts and community leaders, to govern and operate the Normandy School District. The Task Force's "Guiding Principles" were such that "Normandy residents should have access to a unified district of high-

---

[4] In determining the appropriate accreditation level, the State Board uses the Missouri School Improvement Program, or MSIP, which focuses on resource standards (such as class size and course offerings), process standards (that address instructional and administrative processes) and performance standards (that include multiple measures of student performance, such as college/high school readiness, attendance, and graduation rates). These standards are used to generate a district's Annual Performance Report ("APR"), which designates a certain number of points, ranging from 0 to 100, to determine the district's accreditation classification. The APR provides "an objective analysis of each district's attainment of the MSIP 5 Performance Standards and Indicators." The "unaccredited" classification is assigned to districts with 0 to 69 APR points, or 0% to 49.9% of the total points. Before the 2013-14 school year, in July 2013, DESE calculated Normandy to have an APR score of 11.1%. In July 2014, DESE calculated Normandy's successor entity, the Collaborative, to have an even worse APR score of 7.1%.

[5] Under Section 161.092(9), the State Board has the authority to "classify the public schools of the state . . . , establish requirements for the schools of each class, and formulate rules governing the inspection and accreditation of schools." Section 161.092(14) gives the State Board the authority to "promulgate rules under which the board shall classify the public schools of the state."

4

quality schools that hold students to high expectations." On May 12, 2014, the Task Force issued recommendations relating to "governance structure, advisory committees, system components, community partnerships, educators and leaders."

On May 20, 2014, the State Board adopted a resolution that "lapsed" the Normandy School District as of June 30, 2014. The resolution established the Collaborative as of July 1, 2014, "within the existing boundaries of the Normandy School District," retaining and exercising all authority previously granted to the State Board of the unaccredited Normandy School District. Pursuant to Section 162.081.3(2)(b), the State Board gave the Collaborative the authority to take any actions necessary for its operation, subject to the advice and consent of the State Board. The May 20, 2014 meeting minutes did not mention an effort to change the accreditation status of the Collaborative.

On June 16, 2014, the State Board addressed the accreditation status of the Collaborative. Its meeting minutes, approved July 22, 2014, listed under "Consideration of Classification Determination for the Normandy Schools Collaborative," state that the State Board voted unanimously to grant "a waiver under Mo. Rev. Stat. Section 161.210," giving the Collaborative a "new school status as a state oversight district."

In announcing the creation of the Collaborative, the State Board indicated that a Normandy Joint Executive Governing Board will "within ninety days of appointment, implement a school improvement plan" and "provide quarterly reports" to the State Board. The announcement also indicated that "the waiver status shall be reviewed based upon the benchmarks established by DESE." DESE also provided an "Accountability Plan," creating a "Regional School Improvement Plan" to conduct "monthly progress monitoring meetings" and established three tangible goals for curriculum and assessment.

5

The State defendants initially did not claim that the new classification "status as a state oversight district" was the same as "accredited" and their public comments indicated a clear difference between the two. For example, a State Board agenda item stated that certain benchmarks established by DESE would be necessary to achieve to return the Collaborative to full accreditation. Several of the State Board members indicated that the goal of the new classification was to move the Collaborative "to provisional first and ultimately full accreditation," and that the creation of the Collaborative was "a worthy ambition . . . to get Normandy accredited." A June 16, 2014 statement on the DESE website indicated that "[t]he new district will not have an accreditation status for three years . . ." A letter from DESE to the University City School District on June 18, 2014, stated that "The Normandy Schools Collaborative has been designated as a State Oversight District and will operate without an accreditation status for up to three years."

Soon after the Collaborative's creation, DESE informed various school districts that they had the option to accept or deny the Normandy transfer students for the 2014-15 school year. Pattonville, Ritenour, Ferguson-Florissant, and Francis Howell informed Plaintiffs that they would not accept transfer students from the Collaborative for the 2014-15 school year, although other districts willingly accepted them. Shortly thereafter, the Collaborative informed Plaintiffs that their children would not be allowed to transfer out of the Collaborative.

On June 26, 2014, DESE issued an "Updated Operating Policy for Transfers from the Normandy Schools Collaborative" that restricted transfers to students who attended school in the Normandy School District during the 2012-13 school year and transferred out of the Normandy School District for the 2013-14 school year – along with the students' kindergarten siblings. On

6

July 23, 2014, DESE revised its "Updated Operating Policy" by eliminating the requirement that the students must have attended the Normandy School District during the 2012-13 school year.

Plaintiffs filed the underlying lawsuit on July 14, 2014, in St. Louis County, amending it four times thereafter. Plaintiffs sought declaratory relief based on the assertion that the State Board never actually gave the Collaborative an "accredited" status (despite the State Board's arguments to the contrary), thereby not providing any authority to prohibit Plaintiffs from transferring out of the Collaborative; declaratory relief based on the assertion that the State Board improperly attempted to change the accreditation status of the Collaborative by disregarding several state statutes and other mandates; declaratory relief based on the assertion that the State Board improperly attempted to change the accreditation status by engaging in rulemaking without following the necessary Missouri procedures; injunctive relief seeking to prohibit the Receiving Districts from denying admission to any of Plaintiffs' children who request to transfer from the Collaborative, and to require the Collaborative to pay the costs of tuition for these students who seek to attend schools in the Receiving Districts during the 2014-15 school year; and temporary injunctive relief seeking to prohibit school districts from declining to take any Collaborative transfer students for the 2014-15 school year.

On August 15, 2014, the trial court entered a preliminary injunction in favor of Plaintiffs. At that time, Ferguson-Florissant, Pattonville, and Ritenour agreed to accept transfer students, but continued to litigate this case. Francis Howell, however, would not accept any transfer student who did not have an order from the trial court requiring Francis Howell to accept the specific student. As new Plaintiffs joined the case with a wish to return to Francis Howell, each requested that the trial court grant injunctive relief. The court granted each individual request. The case was tried on December 18, 2014. The trial court granted a permanent injunction and

7

entered judgment on February 11, 2015.  The trial court summarized that when faced with the choice of "illogically call[ing] a horribly failing school district 'accredited' or call[ing] the [Collaborative] something else and boldly announc[ing] that the transfer statute would not be applicable," the State Board chose the latter approach.  The trial court found the "overwhelming evidence leads to the inescapable conclusion that the [Collaborative] was never accredited" and that no evidence was ever presented to the court to show that the State defendants ever stated in writing that the Collaborative is accredited.  The trial court held that the transfer statute, Section 167.131, still applies.

Moreover, the trial court noted that Section 162.081 provides the procedures that DESE and the State Board **must** follow to change the status of a school district after it has been classified as unaccredited, and those requirements were not met to change the status of the Collaborative.  The trial court declared that the State Board must classify the Collaborative, and that it was "unaccredited" until such time that it achieves a different status – either provisionally accredited, accredited, or accredited with distinction.

Further, the trial court determined that the State Board engaged in rulemaking when it reclassified the Collaborative as a state oversight district (thereby waiving the necessary accreditation regulations), and it held that the State Board did not follow proper rulemaking procedures in waiving the accreditation regulations for the Collaborative.  The State Board cited its broad authority to waive or modify its own rules as well as DESE's policies in taking its actions regarding the Collaborative, but the trial court held that statutes cannot be waived or modified under this authority in Section 161.210.  The rulemaking statutes in Chapter 536 apply to the State Board, including the statute that states that a rule includes "the amendment or repeal of an existing rule."  Section 536.010(6); Greenbriar Hills Country Club v. Dir. of Revenue, 47

8

S.W.3d 346, 356 (Mo. banc 2001). Thus, the State Board still needed to follow rulemaking procedures in waiving (repealing) or modifying (amending) existing rules pertaining to the State Board and DESE. Accordingly, the trial court held that the failure to comply with rulemaking procedures renders the purported rule void, and the State Board and DESE could not give the Collaborative an accreditation status different than the four classifications in 5 C.S.R. 20-100.105(3).

This appeal follows.

## II. Discussion

Appellants each raise similar issues on appeal. First, Appellants all contend that the trial court erred in holding that the State Board exceeded its authority and could not classify the new Collaborative with the classification, "accredited as a state oversight district," which does not appear in the State Board's existing rules, because the State Board is granted broad authority to waive or modify its accreditation rules in that Section 161.210 permits the Board to waive its rules "notwithstanding any provision of law to the contrary," and the change made by waiver would not violate any statute. Additionally, Appellants allege the State Board did not engage in invalid rulemaking when it waived its accreditation rules to designate the Collaborative "accredited as an oversight district" in that the State Board's action was not generally applicable, but rather, intended to apply to a specific set of facts and unique circumstances.

Appellants argue that Section 162.081 sets forth the requirements for the State Board upon classifying a school district unaccredited and lapsing a school district and does not limit the State Board's authority to waive or modify its accreditation rules. Appellants further argue that the State Board's decision to "lapse" the Normandy School District was proper because Plaintiffs did not present substantial evidence that the State Board did not comply with the requirements of

9

Section 162.081, and any defect in connection with the "lapse" would not form a basis for depriving the State Board of its ability and responsibility to give the Collaborative an accreditation classification.

Finally, Appellants allege the State Board has re-classified the Collaborative as "unaccredited" and, since there is no basis for assuming that the State Board will use its "accreditation as a state oversight district" designation again, the trial court's holding as to that specific matter is moot and should be vacated.

A. Standard of Review

Because this case was submitted on stipulated facts, the trial court reviewed only the questions of law. Thus, the standard of review is *de novo*. Lumetta v. Sheriff of St. Charles Cnty., 413 S.W.3d 718, 720 (Mo. App. E.D. 2013). The interpretation of a statute is purely a question of law, and this Court is not bound by the trial court's interpretation. State of Missouri v. Rodgers, 396 S.W.3d 398, 400 (Mo. App. 2013). The question then, is whether the trial court drew the proper legal conclusions from the facts stipulated. State ex rel. Valentine v. Orr, 366 S.W.3d 534, 538 (Mo. 2012).

B. Analysis

*1. Mootness*

As a threshold matter, we begin with Appellants' argument that the State Board has changed the Collaborative's classification to "unaccredited" and, because there is no basis for assuming that the State Board will use its "accreditation as a state oversight district" designation again, the trial court's holdings as to that specific matter is moot and should be vacated. We disagree.

Mootness implicates the justiciability of a controversy and is a threshold issue to appellate review. Missouri Mun. League v. State, 465 S.W.3d 904, 906 (Mo. banc 2015).

> A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event occurs which renders a decision unnecessary, the appeal will be dismissed. And where an enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot.

Humane Soc'y of United States v. State, 405 S.W.3d 532, 535 (Mo. banc 2013) (quoting C.C. Dillon Co. v. City of Eureka, 12 S.W.3d 322, 325 (Mo. banc 2000)).

As explained in State ex rel. Reed v. Reardon, 41 S.W.3d 470 (Mo. banc 2001), an event rendering a decision unnecessary may occur at any point, including on appeal.

> Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion. In deciding whether a case is moot, an appellate court is allowed to consider matters outside the record.

Id. at 473 (alteration in original) (internal citations and quotation marks omitted).

We recognize that "an exception to the mootness doctrine . . . exists '[w]here the issue raised is one of general public interest and importance, recurring in nature and will otherwise evade appellate review unless the court exercises its discretionary jurisdiction.'" State ex rel. AG Processing, Inc., 276 S.W.3d 303, 306 (Mo. App. W.D. 2008) (quoting Mo. Cable Television Ass'n v. Mo. Pub. Serv. Comm'n, 917 S.W.2d 650, 652 (Mo. App. W.D. 1996)). "This exception to the mootness doctrine is 'very narrow,' and its invocation lies in the discretion of the court." Jackson County Bd. of Elections Comm'rs ex rel. Brown v. City of Lee's Summit, 277 S.W.3d 740, 745 (Mo. App. W.D. 2008).

Although the State Board classified the Collaborative as "unaccredited" after the trial court's judgment, we decline to dismiss the case as moot since it presents an important question

11

"capable of repetition, yet evading review." Gramex Corp. v. Von Romer, 603 S.W.2d 521, 523 (Mo. banc 1980). The mere classification of the Collaborative itself is not the most important object of this litigation. To be sure, it is, as the trial court called it, "abysmally unaccredited" and certainly students will be irreparably harmed by their forced education here. However, we agree with Plaintiffs that the State Board can once again remove the Collaborative's unaccredited status, or the unaccredited status of another district, for that matter, without legal authorization. This attempt to stop transfers from the unaccredited districts before they regain the properly acquired accredited status undermines the legislative intent of Section 162.081 for unaccredited schools as well as the transfer statute, Section 167.131. We find the questions presented in this appeal are capable of repetition and, therefore, we exercise our discretion in reviewing the merits of this appeal.

Point III of the State Appellants' brief, Point III of the Receiving District's brief, and Point IV of the Collaborative's brief are denied.

*2. Requirements for unaccredited schools: Section 162.081.*

Appellants each argue that the trial court erred in its decision to grant injunctive and declaratory relief in holding that the State Board failed to comply with Section 162.081, the statute addressing unaccredited school districts. The Collaborative argues that the State Board chose to exercise its waiver authority because its accreditation rules did not address state intervention and the newly added option of an alternative governance structure, and to ameliorate the harsh effects of Section 167.131.

It is important to first review how this Court interprets statutes. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and

12

ordinary meaning." City of Willow Springs v. Mo. State Librarian, 596 S.W.2d 441, 445 (Mo. banc 1980); see also Anani v. Griep, 406 S.W.3d 479, 482 (Mo. App. E.D. 2013). When the words are clear there is nothing for us to construe beyond applying the plain meaning of the language found therein. State v. Rowe, 63 S.W.3d 647, 649 (Mo. banc 2002). If a phrase or term is included in one section of a statute but the same language is omitted from another, we presume that the disparate language was enacted purposefully. Anani, 406 S.W.3d at 482. Further, "[p]rovisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end the court deems beneficial." Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 143 (Mo. banc 1980).

Just as the trial court noted in its Judgment, we find here that the legislature has clearly not given the State Board unfettered discretion in classifying school districts. Section 161.092(9) provides that the State Board shall "classify the public schools of the state *subject to limitations provided by law . . .*" Also duly noted by the trial court, this qualifier was used only regarding the State Board's power to classify the public schools, rather than with all of the other fourteen powers of the State Board. This was a careful attempt by the legislature to make sure that Section 162.081's directives are followed by the State Board.

When a school district in a state is classified as unaccredited, Section 162.081 must be followed. Section 162.081 reads, in part:

1. Whenever any school district in this state fails or refuses in any school year to provide for the minimum school term required by section 163.021 or is classified unaccredited, the state board of education shall, upon a district's initial classification or reclassification as unaccredited:
   (1) Review the governance of the district to establish the conditions under which the existing school board shall continue to govern; or
   (2) Determine the date the district shall lapse and determine an alternative governing structure for the district.

13

Section 162.081.2 further provides the procedures that DESE must take to change the status of a school district after it has been classified as "unaccredited." Section 162.081.3 also sets forth the options available to the State Board with respect to governance of a district that has been classified as unaccredited. Sections 162.081.3-.8.

Thus, after lapsing the Normandy School District and determining that the Collaborative was the alternative governing structure pursuant to Section 162.081, DESE and the State Board should have continued to use the statute to return the Collaborative to full accreditation, pursuant to the procedures in the statute. The statute specifies that two public hearings shall be conducted after the district is classified as unaccredited. Section 162.081.2. It indicates that the hearings "shall provide an opportunity to convene community resources that may be useful or necessary in supporting the school district as it attempts to return to accredited status . . .," and indicates that DESE may "request the attendance of stakeholders and district officials to review the district's plan to return to accredited status . . . , offer technical assistance; and facilitate and coordinate community resources." Section 162.081.2.[6]

Appellants argue that Section 162.081 has no bearing on the authority of the State Board to create a new accreditation classification for a newly reorganized school district, contrary to the trial court's ruling that Section 161.081 limited the State Board's authority to waive its accreditation rule. We disagree.

Although Section 162.081.3 states that the State Board of education *may* take a couple different steps once a district is classified as unaccredited, as if to indicate that the action the State Board takes is merely optional, this State Board did in fact take the second option as

---

[6] The trial court accepted Appellants' representation that the hearings were actually held, although the only evidence presented was that the two public hearings were scheduled within the Normandy School District on November 11 and December 11, 2013.

14

provided in the statute when it lapsed the corporate organization of the unaccredited district. Section 162.081.3(2). The trial court did not take issue with the lapsing of the district, nor should it have, as the lapsing is clearly listed in the statute. However, once that option is taken, the statute then continues, by the conjunction "and," by *requiring* additional steps, which include numerous references to the accreditation classification designations based on the standards of the MSIP found in 5 C.S.R. 20-100.105(3). One of the additional steps includes a requirement that "any special administrative board appointed under this section shall be responsible for the operation of the district until such time that the district is classified by the state board of education as *provisionally accredited* for at least two successive academic years, after which time the state board of education may provide for a transition pursuant to section 162.083; . . ." Section 162.081.3(2)(a) (emphasis added). Another reference includes a review of the alternative form of governance every three years in the absence of the district's achievement of "full accreditation," an anticipated time line for the district to reach "full accreditation," and annual reports on the progress towards accreditation. Section 162.081.3(2)(b)a-d. Additionally, 5 C.S.R. 20-100.105(5) provides that the State Board will assign one of the four classification designations based on the standards of the MSIP, which remain in effect until the State Board approves another designation. The State Board may consider changing a district's classification designation upon its determination that the district has done one of several enumerated things: (A) failed to implement any required school improvement plan at an acceptable level; (B) demonstrated significant change in student performance over multiple years; (C) employed a superintendent or chief executive officer without a valid Missouri superintendent's certificate in a K-12 school district, or employed a superintendent or chief executive officer without a valid Missouri superintendent's or elementary principal's certificate in a K-8 school district; (D)

15

experienced significant change in the scope or effectiveness of the programs, services, or financial integrity upon which the original classification designation was based; and/or (E) failed to comply with a statutory requirement. 5 C.S.R. 20-100.105(5).

In its ruling, the trial court stated that a school district must meet certain benchmarks as set out in Section 162.081 and 5 C.S.R. 20-100.105(3) before it is worthy of the State Board's designation of "accredited." 5 C.S.R. 20-100.105 lists the accreditation statuses and notes that the rule itself is enacted pursuant to Section 161.092. The trial court noted that no evidence was ever presented to show that the State defendants ever stated in writing that the Collaborative is "accredited," and that the State's act of giving the Collaborative a new classification label, which was not found in any Missouri statute or rule, was an effort to circumvent the statutory process and a "legal wrong." Moreover, the trial court noted that no evidence was presented here of any review and recertification by the State Board as required by the statute, Section 162.081.3. The State Board complied neither with the requirement that it must establish a method "to provide public comment after a stated period of time and upon achievement of specified academic objectives," nor with the requirement that it provide "expectations for progress and academic achievement." Section 162.081.3. Finally, the State Board did not provide reports to the general assembly and the governor, nor did it state its plan to submit them in the future, regarding the progress toward accreditation. Section 162.081.3.

Just as the trial court construed the language of the statute, we agree that the implications throughout are clear: that progress and academic achievement must actually occur before an upgraded accreditation status can be achieved. The steps and time periods with which they should be taken are built into the statute as requirements toward achieving the full accreditation, in accordance with the plain and ordinary meaning of the statute. No exceptions are listed. In

16

ascertaining the legislative intent of Section 162.081, we note that each word, clause, sentence, and section of the statute should be given meaning. See Middleton v. Dept. of Corr., 278 S.W.3d 193 (Mo. banc 2009) (citing Missouri Prop. & Cas Ins. Guar. Ass'n v. Pott Indus., 971 S.W.2d 302, 305 (Mo. banc 1998)). Moreover, a court should not interpret a statute so as to render some phrases as mere surplusage. Id. (citing Spradlin v. City of Fulton, 982 S.W.2d 255, 262 (Mo. banc 1998)). There was no review and recertification in the record by the State Board before it issued its new status for the Collaborative on June 16, 2014, as a state oversight district. Moreover, there are only four classifications for accreditation: unaccredited, provisionally accredited, accredited and accredited with distinction. 5 C.S.R. 20-100.105(3), as enacted pursuant to Section 161.092. "State oversight district" is not one of the classifications. Because Section 162.081.3 was not followed after the lapsing of the unaccredited Normandy School District, the Normandy schools within the Collaborative simply cannot move from "unaccredited" to "accredited" without following the required procedures. The State Board exceeded its authority under Section 162.081 and 161.092. Accordingly, the unaccredited district, lapsed and proceeding under an alternative governing structure, is subject to the transfer statute, Section 167.131, until those required procedures in Section 162.081 are followed.

*3. Requirements for waiver in Section 161.210*

Instead of following the requirements of Section 162.081, Appellants contend that the State Board's waiver power under Section 161.210 validates its actions to deny transfer for students out of the Collaborative. We disagree.

The State Board does have broad authority to waive or modify its own rules as well as the policies of DESE. Section 161.210. However, we recognize that this grants the State Board the authority to waive or modify any *administrative rule* adopted by the State Board, not a statute.

Thus, the requirements for unaccredited lapsed school districts as set forth in the statute, Section 162.081, cannot be waived or modified pursuant to Section 161.210. Such requirements toward accreditation, as discussed supra, still apply.

In reviewing Appellants' claim of waiver of an administrative rule, we read the "waiver" statute alongside of Section 536.010(6) regarding administrative rules. Under the Missouri Administrative Procedure Act ("MAPA"), a rule includes "the amendment or repeal of an existing rule." Section 536.010(6). See Greenbriar Hills Country Club v. Dir. of Revenue, 47 S.W.3d 346, 358 (Mo. banc 2001) ("To repeal a rule, an agency must comply with the notice, publication, and public comment method prescribed in section 536.021 of Missouri's Administrative Procedure Act.").

Under Section 536.010, a rule is "each agency statement of general applicability that implements, interprets, or prescribes law or policy," including "amendment or repeal of an existing rule." Section 536.010(6). We examine, then, whether the State Board's classification of the Collaborative as a "state oversight district," outside of the State Board's accreditation procedures, constitutes a rule under Chapter 536.

Actions of state agencies are rules when they are of general applicability and contain a future effect. Section 536.010(6). To be generally applicable, the Missouri Supreme Court has found that statements made by the Missouri Medical Services Division were generally applicable rules even though they did not apply to all patients or all hospitals. Dept. of Soc. Servs., Div. of Med. Servs. v. Little Hills Healthcare, L.L.C., 236 S.W.3d 637, 640 (Mo. banc 2007). Additionally, although DMS argued in Little Hills Healthcare that its determination of the estimated Medicaid day payments did not amount to a rule because DMS annually changed its calculation formula, the Court rejected this argument and found its changing of its calculation

18

methods does not change the fact that its methods "could apply indefinitely in the future." 236 S.W.3d at 643.

Removing the Collaborative from the accreditation structure in 5 C.S.R. 20-100-105 would have effects on thousands of students in the Collaborative's boundaries, but also on all public school districts in the same or adjoining county from St. Louis County, based on the possibility of students transferring into those districts. See Section 167.131.1. Just like in Little Hills Healthcare, the State Board's assertion is generally applicable to at least the select group of Missouri students who live within the borders of the Collaborative. Thus, the actions of the State Board regarding the Collaborative's classification are generally applicable. Additionally, the resolution of the State Board, without a designated time frame, can be considered to have a "future effect" on any students wishing to transfer from the Collaborative to an accredited school district, and on those districts themselves.

Next, to be considered a rule, an agency statement must have some significant impact, or direct potential for impact, on a party's legal rights. Baugus v. Dir. of Revenue, 878 S.W.2d 39, 42 (Mo. banc 1994).

> Implicit in the concept of the word 'rule' is that the agency declaration has a potential, however slight, of impacting the substantive or procedural rights of some members of the public. Rulemaking, by its very nature, involves an agency statement that affects the rights of individuals in the abstract.

Id. The "potential impact" on the rights of some members of the public must flow directly from the supposed "rule" (and not from possible future contingencies). Missouri Soybean Assn. v. Missouri Clean Water Comm'n, 102 S.W.3d 10, 14, 24 (Mo. banc 2003). The State Board's resolution regarding the Collaborative's classification affects the legal rights of students in the district as well as those rights and obligations of the Receiving Districts.

19

Finally, the Court determines whether the State Board promulgated the resolution classifying the Collaborative as a "state oversight district" as a "rule." Section 536.010(6) defines "rule" as an "agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of an existing rule . . ." However, even a statement that seems to fit the definition of a rule under Section 536.010(6) is not a rule if the agency making the statement has not attempted to promulgate the statement as a rule. United Pharmacal Co. of Missouri Inc. v. Missouri Bd. of Pharmacy, 159 S.W.3d 361, 365 (Mo. banc 2005). If a statement is not a rule, then it is "merely an expression of the [state agency's] interpretation of law without any force or legal effect." Id.

The Missouri Supreme Court held a letter by the State Board of Healing Arts was "merely an expression of the Board's position and is without force and legal effect" and not a "rule" because it was written with language generally applicable to all physicians and advanced practice nurses ("APNs"), the language was not confined to a specific set of facts but had a future effect and potential impact on any physician wishing to delegate the procedure to an APN and, in turn, on any APN wishing to engage in the procedure. Missouri Ass'n of Nurse Anesthetists, Inc. v. State Bd. of Registration for Healing Arts, 343 S.W.3d 348, 357 (Mo. banc 2011). Here, the State Board did not merely mention its reclassification on its website or send a letter to the Collaborative as an advisory opinion. It promulgated the resolution as a "rule" that had general applicability, future effect, and affected the Plaintiffs' legal rights. However, the State Board failed to follow rulemaking procedures to promulgate such rule as required by Section 536.021.[7] This statute also cannot be waived.

_____

[7] Section 536.021 requires that the State Board file notice of its proposed rulemaking and subsequent final order of rulemaking with the Missouri Secretary of State. Section 536.021.1. The proposed rulemaking and final order of

20

The State Board's decision to allegedly "waive" its rules regarding a lapsed school district and the procedures it must follow to regain accreditation not only affect students in the Collaborative, but also students of future similarly-situated school districts. The State Board's attempt to instantaneously remove all the protections of the accreditation statutes and rules, including the transfer statute, defies legislative intent. Even under the State Board's administrative authority through the waiver statute to waive ("repeal") or modify ("amend") existing rules that pertain to the State Board and DESE, the State Board must follow rulemaking procedures, but failed in doing so here. See Section 536.010(6). The State Board's actions are unauthorized rulemaking that must be void. See NME Hosps., Inc. v. Dept. of Soc. Servs., Div. of Med. Servs., 850 S.W.2d 71, 75 (Mo. banc 1993).

The trial court did not err in granting Plaintiffs' declaratory relief and declaring that the only applicable status for the Collaborative is "unaccredited." Appellants' remaining points on appeal are denied.

### III. Conclusion

The judgment of the trial court is affirmed.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J.,
Mary K. Hoff, J., concur.

---

rulemaking would then be "published in the Missouri Register by the secretary of state as soon as practicable." Id. Section 536.021 further provides that

> after the final order of rulemaking has been published in the Missouri Register, the text of the entire rule shall be published in full in the Missouri code of state regulations. No rule, except an emergency rule, shall become effective prior to the thirteenth day after the date of publication of the revision to the Missouri code of state regulations.

Section 536.021.8.