

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| C.D.J., JR., BY AND THROUGH HIS NEXT FRIEND C.D.J., SR. AND C.D.J., SR., INDIVIDUALLY, | ) ) ) | No. ED103969 |
| | ) | |
| Respondents, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | Honorable Ellen H. Ribaudo |
| MISSOURI DEPARTMENT OF SOCIAL SERVICES, CHILDREN'S DIVISION, | ) ) ) | |
| Appellant. | ) | Filed:  November 8, 2016 |

### Introduction

The Children's Division of the Missouri Department of Social Services (the "Division") appeals the order and judgment of the circuit court of St. Louis County in favor of C.D.J. Jr. ("Son") and C.D.J. Sr. ("Father") (collectively "Respondents").  The circuit court reversed the Division's administrative determination that Son was abused by an unknown perpetrator, finding that the Division's determination was not supported by competent and substantial evidence, and was arbitrary, capricious, unreasonable, and an abuse of discretion.  The court ordered the Division to remove its determination from the Central Registry.  On appeal, the Division argues (1) Respondents did not have standing to seek judicial review of its determination because they were not "aggrieved" and (2) the court should not have conducted contested case review, but

should have instead conducted de novo judicial review pursuant to § 536.100.[1] We affirm the circuit court's judgment on the basis that the Children's Division does not have the statutory authority to substantiate a report that an "unknown perpetrator" committed child abuse.

**Factual Background**

On June 30, 2014, Son was taken to Downtown Urgent Care in St. Louis, Missouri after he broke his arm. At the time of the incident, Son was a ten year old child with a history of self-injurious behavior and had been diagnosed with Autism, ADHD, and Reactive Attachment Disorder. While at Downtown Urgent Care, Son told staff that his injuries occurred because he fell while he was standing on the seat of a riding lawn mower in his family's tool shed. Son's nine-year-old sister, who was present at the time of Son's injury, gave an account that was consistent with Son's explanation. Dr. Sagger, Son's treating physician while at Downtown Urgent Care, did not suspect that Son's injuries had been the result of abuse. Son was then taken to the Cardinal Glennon Hospital Emergency Room, where he was seen by Dr. Goldberg, an emergency room resident. Dr. Goldberg also did not suspect that Son had been abused. However, Dr. Yang, an attending physician at Cardinal Glennon Hospital, noted that aside from his broken arm, Son had a black eye, linear bruising on his back, and bruising on his inner thighs that appeared to have occurred at different times. Dr. Yang suspected there may have been some other cause for Son's injuries aside from the explanation given by Son. As a result, Dr. Yang called the Division and signed an affidavit stating that he had probable cause to believe that Son had been abused or neglected.

The Division investigated Son's injuries. While the investigation was still ongoing, the Juvenile Officer filed a petition in the St. Louis County Family Court, alleging that Son's father and step-mother neglected Son by failing to provide necessary supervision for Son's well-being.

---

[1] Unless otherwise indicated, all statutory citations are to RSMo 2000.

2

Son was taken from his parents and placed in protective custody. On July 31, August 1, and August 7, 2012, the family court held an evidentiary hearing to determine whether Son had been abused or neglected by his parents. On August 7, 2012, the family court entered its findings, order, and judgment, holding that the allegations of the Juvenile Officer's petition had not been proven and were dismissed. The family court's judgment was not appealed.

On September 13, 2012, the Division sent Father notice that it had completed its investigation and had determined by a preponderance of the evidence that Son had been the victim of physical abuse. The notice stated that the alleged perpetrator of the abuse was "unknown." The notice stated that "[i]f you are named as an alleged perpetrator and you disagree with the Division's preliminary finding you . . . [may] seek reversal of the Division's determination through a review by the Child Abuse and Neglect Review Board [CANRB]" or waive independent review by the CANRB and file a petition in the circuit court for de novo review. The notice stated that requesting direct judicial review would result in the alleged perpetrator's name being entered into the Central Registry.

Son filed a petition for judicial review of the September 13, 2012 decision, alleging that he was aggrieved by the Division's determination that Son was abused. Son further alleged that the Division's determination was made in excess of its statutory authority. Father filed a petition to be appointed Son's next friend, as well as a motion for permission to file an amended petition for judicial review. The amended petition added Father as a party, and added that "Petitioner is aggrieved by the decision of [the Division], in that there is now an administrative finding that the minor child was a victim of physical abuse when he was not." The Division filed an amended motion to dismiss. In March 2014, the circuit court denied the Division's motion and set the case for an evidentiary hearing. In April 2014, the circuit court removed the case from its setting

3

and asked the parties to brief whether "an evidentiary hearing is the next step or an appellate review."

The Division argued that de novo judicial review was appropriate pursuant to § 536.100 RSMo, and further argued that Father was not aggrieved by the Division's determination that Son had been abused. Respondents argued that they were aggrieved and were seeking direct judicial review of the Division's determination. Respondents asserted, however, that the court was precluded from conducting a new evidentiary hearing because of the family court's August 7, 2012 determination.

The circuit court agreed with Respondents and, in a December 2014 order, held that it would proceed with "judicial review of a contested case under the scope of review provided in Section 536.140 RSMo." The circuit court requested the parties to provide the transcripts and exhibits from the prior administrative investigation and family court case for it to review in order to enter its decision.

In December 2015, the circuit court entered its order and judgment finding that, based on the transcript from the family court adjudication and the Division's investigation records, the Division's September 2012 determination was not supported by substantial evidence. The court found that the Division abused its discretion in determining that Son was physically abused by an unknown perpetrator. The court ordered the Division to remove the incident report relating to its determination from the Central Registry. In January 2016, the Division filed its notice of Appeal of the court's December 2015 judgment. On appeal, the Division argues that: (1) the circuit court lacked subject matter jurisdiction to review the Division's determination because Respondents were not aggrieved by the determination, and (2) the circuit court lacked the authority to conduct contested case review and instead should have conducted de novo review.

4

**Discussion**

Before addressing the merits of this appeal, the measures Missouri uses to protect abused and neglected children need explanation. The Missouri Child Abuse Act is codified in §§ 210.108-210.188. In § 210.145.1, the legislature established four priorities for the Division and other state agencies to follow when dealing with a report of abuse or neglect of a child. These priorities are: 1) ensuring the wellbeing and safety of the child; 2) promoting the preservation of the family unit; 3) providing due process to those accused of child abuse or neglect; and 4) maintaining an information system capable of receiving and maintaining reports of child abuse and the subsequent investigations. *See Pitts v. Williams*, 315 S.W.3d 755, 759 (Mo. App. W.D. 2010).

In order to balance the four priorities, the legislature set forth procedures to be implemented by the Division. First, when an allegation of abuse or neglect is reported, the Division must determine whether it believes the report merits investigation. § 210.145.3. If the Division determines that an investigation is warranted, then it must contact the appropriate law enforcement authority to inform it of the allegations and request assistance with the investigation. § 210.145.5. When the Division investigates a report of abuse or neglect it must, within ninety days, notify the alleged perpetrator and the victim's parents in writing of its finding. § 210.152.2. A finding by the Division that abuse or neglect occurred is appealable to the Child Abuse and Neglect Review Board as well as to a circuit court in Cole County or the county in which the individual appealing the determination resides. § 210.152.6.

A person who has been determined to be an alleged perpetrator of abuse or neglect by the Division will have their name listed on the Central Registry. The names and investigation records listed on the Central Registry are not accessible by the general public. § 210.150. They

are, however, accessible to persons or organizations listed in § 210.150.2, which include, *inter alia*: 1) physicians who reasonably believe that a child they are examining may be abused or neglected, 2) law enforcement personnel, 3) the Division's personnel, and 4) public or private schools and child-care facilities that request background checks on employees or volunteers.

## Point I: Standing

The Division argues that Respondents do not have standing to challenge its determination that Son was abused by an unknown perpetrator because Respondents were not aggrieved by the determination. The Division asserts that Respondents do not have a legally cognizable interest or right in the subject matter of the proceeding that is adversely and directly affected by the decision. Respondents contend that they are aggrieved because the Division's determination "will be noted in any subsequent Family Court proceedings." Respondents, citing *In the Interest of D.D.H. v. Glenda P.,* 875 S.W.2d 184, 188 (Mo. App. S.D. 1994), argue that prior allegations of abuse can be prima facie evidence of imminent danger sufficient to remove a child from his or her environment.

### *Relevant Law*

"Standing is a question of law, which is reviewed *de novo.*" *Manzara v. State,* 343 S.W.3d 656, 659 (Mo. banc 2011). Parties seeking relief "bear the burden of establishing that they have standing." *Id.* "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Alderman of the City of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002). To successfully assert standing, a plaintiff must have a legally protectable interest. *Comm. for Educ. Equality v. State,* 294 S.W.3d 477, 484 (Mo. banc 2009). A legally protectable interest exists only if the plaintiff is directly and adversely affected by the

challenged action or if the plaintiff's interest is statutorily conferred. *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 622–23 (Mo. 2011).

For a plaintiff to be entitled to review of an administrative decision, they must be an aggrieved person under § 536.100. To qualify as "aggrieved," the plaintiff must demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and that the decision will have a direct and substantial impact on that interest. *City of Eureka v. Litz*, 658 S.W.2d 519, 522 (Mo. App. E.D. 1983). "The decision must operate prejudicially and directly upon the plaintiff's personal or property rights or interests, and the effect must be immediate and not merely a possible remote consequence." *Id.*

Whether the party opposing an administrative action has a protectable interest "is a matter for ad hoc determination by the courts under the given circumstances." *Horseshoe Bend Prop. Owners Ass'n v. Camden County Commn.,* 748 S.W.2d 848, 853 (Mo. App. S.D. 1988) (quoting *Eureka* 658 S.W.2d at 522). The determination is one of law and depends upon a variety of considerations, "including the nature and extent of the interest of the person who asserts status to contest the administrative action, the character of the administrative action, and the terms of the statute which enable the agency action." *Eureka,* 658 S.W.2d at 519. The determination rests on policy as well as law, and a reviewing court must weigh the considerations pursuant to the discerned legislative values. *Id*.

### *Analysis*

In the present matter, both Respondents have standing to challenge the Division's determination that Son was the victim of abuse by an unknown perpetrator. The interest that Son has in not being removed from his Father's care, and the interest that Father has in not having his Son removed from his care by the State, are interests of great importance. *See Troxel v.*

*Granville,* 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case–the interest of parents in the care, custody, and control of their children–is perhaps the oldest of the fundamental liberty interests recognized by this Court"). The Division's determination that Son was abused by an unknown perpetrator was included in the Central Registry. The determination is accessible by the Division in the event any future report is made involving son, and will also be accessible by Son's physicians should one of them have "reasonable belief" son has been abused.

The legislature acknowledged the significance of the Respondents' interests when it created § 210.145.1. That statute lists "the preservation and reunification of children and families" as a priority in the development of child abuse reporting and investigation procedures. Given the importance of the Respondents' interests at stake in the present matter, and the negative impact the Division's determination will have on these interests, we conclude that Respondents are aggrieved and have standing to challenge the Division's determination that Son was the victim of abuse by an unknown perpetrator.

Moreover, if Respondents did not have standing, that would render the Division's determination of abuse of Son completely unreviewable. There is a presumption of reviewability of administrative action, and the Division has not rebutted this presumption. *See Smith v. Missouri State Bd. of Probation & Parole,* 743 S.W.2d 123, 125 (Mo. App. W.D. 1988).

**Point II: Division's Authority to Determine Abuse by an "Unknown Perpetrator"**

In its second point, the Division argues that the circuit court erred by failing to conduct de novo review of Respondents' claims. However, before we consider the merits of the Division's argument, we must determine whether the Division had authority to render its determination that Son was abused by an unknown perpetrator. When an agency's actions

exceed and violate its statutory authority, "its acts are void *ab initio.*" *Cantrell v. State Bd. of Registration for Healing Arts,* 26 S.W.3d 824, 827 (Mo. App. W.D. 2000)*.* Thus, if the Division was without authority to determine that Son was abused by an unknown perpetrator, we need not consider the Division's argument because its underlying determination is void and the record of its determination must be removed from the Central Registry.

In supplemental briefing by the parties, the Division argued that its authority to determine that an unknown perpetrator committed child abuse or neglect is necessarily implied from its statutory authority pursuant to §§ 210.109, 210.145, and 210.152. Respondents contended that express language of §§ 210.109-210.183.1 contradicts the Division's argument and that the authority to determine that an unknown perpetrator committed abuse cannot be implied as it is not necessary to maintaining the Central Registry.

### *Relevant Law*

We will affirm the trial court's judgment in a court-tried case if it reaches the correct result, even though for an incorrect reason. *Teague v. Missouri Gaming Commn.*, 127 S.W.3d 679, 688 (Mo. App. W.D. 2003). We may review whether an agency has exceeded its statutory *sua sponte. See Cantrell v. State Bd. of Registration for Healing Arts*, 26 S.W.3d 824, 827 (Mo. App. W.D. 2000). Agencies are products of the legislature, and they "possess only those powers expressly conferred or necessarily implied by statute." *Saxony Lutheran High Sch., Inc. v. Missouri Dept. of Nat. Resources*, 404 S.W.3d 902, 906 (Mo. App. E.D. 2013). An agency's power may be implied only "if it necessarily follows from the language of the statute." *Id.*

"This Court's primary rule of statutory interpretation is to give effect to the legislative intent as reflected in the plain language of the statute at issue." *Ivie v. Smith,* 439 S.W.3d 189, 202 (Mo. banc 2014). Whenever possible, "we will not interpret one section in a way that brings

it into contradiction or conflict with another section." *Saxony Lutheran High Sch., Inc. v. Missouri Dept. of Nat. Resources*, 404 S.W.3d 902, 909 (Mo. App. E.D. 2013). Furthermore, "provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end the court deems beneficial." *Massey v. Normandy Schools Collaborative*, 492 S.W.3d 189, 197 (Mo. App. E.D. 2016) (quoting *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137, 143 (Mo. banc 1980)).

The whole of the Child Abuse Act as set forth in Chapter 210 is remedial, and remedial statutes should "be construed so they provide the public protection intended by the legislature." *Frye v. Levy,* 440 S.W.3d 405, 412 (Mo. banc 2014). The Missouri Supreme Court has recognized that "the legislative purpose behind the Child Abuse Act is to protect the victims of child abuse or neglect and any other children with whom the perpetrator may come into contact." *Id.* Moreover, § 210.109.2 RSMo states that the "[t]he child protection system shall promote the safety of children and the integrity and preservation of their families . . ."

*Analysis*

Respondents contend that the Division exceeded its statutory authority when it determined that Son was abused by an "unknown perpetrator" for three reasons:

1) The express language of statutes §§ 210.109-210.183.1 limits the Division to making only two determinations after it receives a report of abuse or neglect; 1) that an "alleged perpetrator" committed the reported abuse or neglect, or 2) that there is insufficient evidence of abuse or neglect;

2) The Central Registry is defined by § 210.110.3 as a registry of "persons";

3) The authority to determine and report that an "unknown perpetrator" committed abuse or neglect cannot be implied as such authority is not necessary or essential to maintaining

10

the Central Registry and it conflicts with the administrative and judicial review provisions set forth in §§ 210.152, 210.153, and 210.183.1.

The Division concedes that it does not have express statutory authority to determine that a child was abused by an unknown perpetrator. However, the Division argues that its authority to determine an unknown perpetrator committed child abuse or neglect is implied for four reasons:

1) The Division is authorized to retain identifying information regarding unsubstantiated reports of suspected abuse or neglect;

2) The Division would be deprived of relevant dispositional information if it were not authorized to determine that an unknown perpetrator committed abuse or neglect;

3) Section 210.152.2(1), (2) does not require the Division to determine that abuse or neglect was committed by a "known" perpetrator, and instead only requires that the Division determine whether abuse or neglect exists.

4) Granting the Division the authority to make a determination that a child was abused by an unknown perpetrator enables the Division to further the purposes of the Missouri Child Abuse Act.

The Division's first two arguments fail because they confuse the issue in this case. Regarding the Division's first argument, the issue before us is not whether the Division is authorized to retain records of substantiated abuse by an unknown perpetrator, the issue is whether the Division may make a determination that a child was abused by an unknown perpetrator in the first place. With regard to the Division's second argument, in order for the Division to be deprived of relevant dispositional information, it would need to have the authority to make a dispositional determination that an unknown perpetrator committed abuse or neglect.

11

In the Division's third argument, it asserts that it has implicit authority to determine that an "unknown" perpetrator committed abuse because it has implicit authority to determine that a "known" perpetrator committed abuse. The Division argues that § 210.152 expressly requires "only that the Division determine whether abuse or neglect exists," and not whether the perpetrator is known or unknown. The Division argues that its authority to determine whether abuse or neglect was committed by a "known" perpetrator is necessarily implied by § 210.109.3(1), along with its other statutory obligations as set forth in Chapter 210. The Division contends that the legislature must have also implicitly authorized the Division to be able to determine that an "unknown" perpetrator committed abuse, because "[a]buse and neglect affects its victims and calls for redress to the same extent whether its perpetrator can be identified or not."

The Division's argument that it only has implied authority, rather than express authority, to determine that a known perpetrator committed abuse or neglect is meritless. Section 210.109.3(1) authorizes the Division to maintain the Central Registry. Section 210.110.3 defines the "Central Registry" as a "registry of *persons* where the Division has found . . . by a preponderance of the evidence . . . that the *individual* has committed child abuse or neglect." (emphasis added). Accordingly, the Division has express statutory authority to determine that a known perpetrator committed child abuse or neglect. Its argument to the contrary is therefore meritless.

We also reject the Division's fourth argument that authorizing the Division to determine that an unknown perpetrator committed child abuse or neglect promotes the purposes of the Missouri Child Abuse Act. The Division asserts that if it receives another report of abuse involving Son, then having a prior record of substantiated abuse, even by an unknown

perpetrator, will provide the Division with "a more knowledgeable investigation" into Son's "current circumstances." However, the Division does not explain how such a record would create a more knowledgeable investigation. The Division argues that it will "perhaps increase the likelihood" that the unknown abuser will be identified in a future investigation, but does not offer any support for why this is the case.

Moreover, the Division is mandated pursuant to § 210.152 to retain "all identifying information" in its records of *unsubstantiated* reports of abuse for a period of (1) five years in instances where the initial report of abuse was made by a mandatory reporter as set forth in § 210.115, or (2) two years in all other instances. In the present case, because the initial report of abuse was made by a mandatory reporter,[2] the Division would have access to all the identifying information in its investigation report for a period of five years regardless of whether it determined that the abuse reported against Son was substantiated. The Legislature's mandate in § 210.152 addresses the Division's concerns and needs with regard to maintaining investigation information for the future.

Registering an unknown perpetrator does not further the purposes of the Missouri Child Abuse Act. Simply stated, registering an unknown perpetrator is registering no one. Registering no one does not further the legislative purpose of the law, which is to protect the victim of abuse or neglect or other children who may come into contact with the perpetrator. *See Frye,* 440 S.W.3d at 412; § 210.109.2.

Having rejected the Division's arguments, we agree with Respondents that the plain statutory language of Chapter 210 demonstrates that the Division does not have the implied authority to determine that an unknown perpetrator committed child abuse. As Respondents

---

[2] The report was made by a physician. Physicians are listed in § 210.115.1 as being required to report to the Division when they have reasonable cause to believe that a child has been abused or neglected.

point out in their supplemental brief, § 210.152.2 mandates that "within ninety days . . . after receipt of a report of abuse or neglect that is investigated, the *alleged perpetrator named in the report . . . shall be notified* in writing of any determination by the division based on the investigation." (emphasis added). By determining that an alleged perpetrator is "unknown," the Division is unable to comply with § 210.152.2's requirement that it notify the alleged perpetrator of the result of its investigation. The Division is also unable to comply with § 210.183.1's requirement that the Division provide the alleged perpetrator with a written description of the investigation process. Furthermore, § 210.110 (3) defines the "Central Registry" as a "registry of *persons* where the Division has found . . . by a preponderance of the evidence . . . that the *individual has committed* child abuse or neglect." (emphasis added). The Division's argument that it has implied statutory authority to make a determination that an unknown perpetrator committed child abuse or neglect conflicts with §§ 210.152.2, 210.183.1, and 210.110.3.

Moreover, as Respondents argue, § 210.152 establishes a system for administrative and judicial review of the Division's determinations of abuse. Section 210.152.4 states "that any person named in an investigation as a perpetrator who is aggrieved by a determination of abuse or neglect . . . may seek an administrative review by the [CANRB]." Section 210.152.6 further provides that "if the alleged perpetrator is aggrieved by the decision of the [CANRB], the alleged perpetrator may seek de novo judicial review in the circuit court . . ." By determining that an "unknown perpetrator" committed child abuse and neglect, the Division effectively nullifies the due process provisions set forth in § 210.152.

As previously stated, whenever possible, "we will not interpret one section in a way that brings it into contradiction or conflict with another section." *Saxony Lutheran High Sch., Inc. v. Missouri Dept. of Nat. Resources*, 404 S.W.3d 902, 909 (Mo. App. E.D. 2013). The Division's

14

argued interpretation of Chapter 210 conflicts with §§ 210.152.2, 210.183.1, and 210.110.3. It circumvents the review provisions set forth in § 210.152, and it is does not necessarily follow from any of the statutory language of Chapter 210. For the foregoing reasons, we conclude that the Division does not have the implied authority to determine that an unknown perpetrator committed child abuse or neglect. Accordingly, we need not determine the merits of the Division's Point II because the Division's underlying determination of abuse is void.

## Conclusion

We believe that the goals of the Division−protecting children from abuse and neglect−are noble. Here, its pursuit of those goals was overzealous. We cannot add an unknown perpetrator provision to Chapter 210 merely because it achieves an end the Division feels would be beneficial. *See Massey,* 492 S.W.3d at 197. We conclude that Respondents have standing to challenge the Division's determination that an unknown perpetrator abused Son. Furthermore, we hold the Division has no statutory authority to substantiate a report that an unknown perpetrator committed child abuse or neglect. On that basis, the circuit court's judgment ordering the Division to remove the incident report that Son was abused by an unknown perpetrator from the Central Registry is affirmed.

_____
Philip M. Hess, Chief Judge

Lawrence E. Mooney, J. and
Kurt S. Odenwald, J. concur.

15